GRANT NEWELL, Admr.

*v.*

CATHARINE MONTGOMERY *et al.*

*Filed at Ottawa May 16, 1889.*

1. ADMINISTRATION OF ESTATES—*sale of land to pay debts—power to settle conflicting titles—constitutionality of act of June 15, 1887.* Prior to the act of June 15, 1887, the county court had no power, in a proceeding by an administrator for an order to sell land for the payment of debts, to call before it adverse claimants to the land, and adjudicate upon their rights before ordering the land to be sold.

2. The act of June 15, 1887, which gives the county and probate courts power and jurisdiction, on application of administrators for leave to sell real estate for the payment of debts, to investigate and determine all questions of conflicting or controverted titles, to remove clouds, etc., is a valid enactment, and is not in contravention of the constitution of the State.

3. The constitution, in conferring upon probate courts jurisdiction in cases of sales of the real estate of deceased persons for the payment of their debts, in no way attempts to define or limit the procedure in cases of that kind, but that is left entirely to legislative discretion. It was, therefore, competent for the legislature to prescribe any procedure which, in its judgment, is appropriate.

4. LACHES—*not imputed to party in possession.* Where a party has been in the actual possession of land all the time under an equitable title thereto, *laches* can not be imputed to him as a bar to equitable relief.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Probate Court of Cook county; the Hon. J. C. KNICKERBOCKER, Judge, presiding.

Mr. LYNDEN EVANS, for the appellant.

Mr. W. H. STEAD, for the appellees.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a petition filed in the Probate Court of Cook county, by Grant Newell, administrator, with the will annexed, of the estate of Patrick Terry, deceased, to sell real estate for the payment of debts. The petition shows that the personal estate of the decedent is exhausted, leaving a deficiency of $1587.85, and that the decedent died seized in fee of the south half of lot seven, block fifty-five, in State's addition to Ottawa, in La Salle county, that being all of the real estate of which he was the owner. As originally filed, the petition made the heirs of Patrick Terry, the devisees under his will, and a man in possession of the land, parties defendant. Subsequently the petition was amended so as to show that Catherine Montgomery, the widow, and William J. Montgomery and others, the children and heirs at law of Robert M. Montgomery, deceased, claimed to have some interest in said real estate, and to make them also parties defendant.

Said widow and heirs answered alleging, in substance, that the lot described in the petition, together with a large amount of other lands, were owned by said Robert M. Montgomery, in his life time, and that after his death, his widow and heirs were involved in litigation in reference thereto, which litigation resulted in a decree of the Circuit Court of La Salle county, establishing a lien thereon in favor of Peter Dunlevy and others for about $5450; that said property was sold under said decree by the master in chancery of said court on the 9th day of January, 1874, to satisfy said decree, interest and costs; that

said widow and children were then members of the Roman Catholic Church at Ottawa, said Patrick Terry being the parish priest in charge of said church; that said widow and children were without business experience, and that said Terry thereupon volunteered to aid them in saving at least a part of the property about to be sold; that said property was sold in parcels for various sums, aggregating the precise amount due on the decree, including interest and costs, said Terry being the purchaser of all the land sold; that the lot in question was struck off and sold to him for $100; that the master subsequently conveyed all of the lands sold to Terry, but that in the whole transaction he acted as the agent, friend and adviser of said widow and heirs; that in paying for said lands he used only $306.80 of his own money, and to make up the residue of the purchase money, he immediately, with the consent of said widow and heirs, sold one tract of the land for $2300, and mortgaged another for $3000, and afterwards sold the tract mortgaged for $700 in excess of the mortgage, receiving said sum of $700 himself and being thus more than reimbursed for the money advanced by him; that ever since the sale, said widow and heirs had been in possession of the lot in question in this suit by their tenants and had received the rents therefrom; that it was through the inadvertence of said Terry, and not through any actual or intentional fraud, that he had failed to convey said lot to them; that during his life time he frequently expressed his intention to make such conveyance, but that his death intervened before he had carried such intention into effect; that by reason of the premises, said widow and heirs are the true and rightful owners of said lot, and that said lot ought not to be subjected to the payment of the debts of said Terry.

The cause being heard on pleadings and proofs, a decree was rendered, finding that said Terry, at the time of his death, held the title in fee to said lot only in trust for said widow and heirs, and that said lot was not subject to the payment

of the debts of said Terry, and ordering that the petition be dismissed. Said decree was thereupon taken by the petitioner to the Appellate Court by appeal, and was there affirmed, and by a further appeal the record is now brought to this court.

It is urged that the probate court has no power, in a proceeding to sell real estate for the payment of debts, to call before it adverse claimants to the land and adjudicate upon their rights before ordering the land to be sold. Such was doubtless the rule prior to the act of June 15, 1887, amending sections 99, 100 and 101 of the act in regard to the administration of estates. *Smith* v. *McConnell*, 17 Ill. 135; *Phelps* v. *Funkhouser*, 39 id. 401; *Cutter* v. *Thompson*, 51 id. 390; *Gridley* v. *Watson*, 53 id. 186; *Shoemate* v. *Lockridge*, id. 503; *Le Moyne* v. *Quimby*, 70 id. 399.

By said amendatory act, the powers of county and probate courts in proceedings to sell lands for the payment of debts are greatly enlarged. That act provides that all persons holding liens against the real estate described in the petition, or any part thereof, or having or claiming any interest therein, in possession or otherwise, shall be made parties; that the practice in such cases shall be the same as in cases in chancery, and that the court may settle and adjust all equities, and all questions of priority, between all parties interested therein, and may also investigate and determine all questions of conflicting or controverted titles arising between any of the parties to such proceeding, and may remove clouds from the title to any real estate sought to be sold, and invest the purchasers with a good and indefeasible title to the premises sold. Laws of 1887, page 3.

It is not claimed that the terms of the amendatory act are not broad enough to warrant the proceedings taken in this case, but the point made by the appellant is, that the act attempts to confer upon county and probate courts a jurisdiction not authorized by the Constitution. The constitutional provision as to the jurisdiction of county courts is found in section

18, article 6 of the Constitution, and is as follows: "County courts shall be courts of record, and shall have original jurisdiction of all matters of probate, settlement of estates of deceased persons, appointment of guardians and conservators, and settlement of their accounts, in all matters relating to apprentices, and in proceedings for the collection of taxes and assessments, and such other jurisdiction as may be provided for by general law." Section 20 of the same article, after authorizing the General Assembly to provide for the establishment of probate courts in each county having a population of over fifty thousand, makes the following provision as to the jurisdiction of such courts: "Said courts, when established shall have original jurisdiction of all probate matters, the settlement of estates of deceased persons, the appointment of guardians and conservators and settlement of their accounts, in all matters relating to apprentices, and in cases of sales of real estate of deceased persons for the payment of debts."

It will be seen that the Constitution, in conferring upon probate courts jurisdiction in cases of sales of the real estate of deceased persons for the payment of their debts, in no way attempts to define or limit the procedure in cases of that character. That is left entirely to legislative discretion. It was therefore competent for the General Assembly to prescribe any procedure which in its judgment was appropriate. There was then no constitutional objection to assimilating it to that which obtains in courts of chancery. Such procedure is certainly as appropriate for the purpose as any which the laws of the State provide or recognize. Nor is there any constitutional objection to a provision requiring all parties interested in the land to be brought before the court and have their rights litigated and ascertained prior to a sale. In case of most judicial sales such provision has always existed. The theory is that the estate in the land which it is proposed to sell can be sold more advantageously and with the expectation of realizing a better price, after the interests of all parties have

been determined, so that the purchaser may know precisely the nature and extent of the estate for which he is bidding. A procedure which requires an adjudication of the rights of all parties in interest before a sale is certainly not inappropriate to cases of sales of the lands of deceased persons for the payment of debts, its advantages being just as manifest there as in case of other judicial sales. That it has not prevailed in probate courts heretofore is not because it was expressly or impliedly prohibited by the constitution, but because it was not provided for by the statute. We see no reason then for holding the amendatory act of 1887 as in any respect repugnant to the Constitution.

The only remaining question which need be noticed is, whether the decree is supported by the evidence. We are of the opinion that it is. The principal witness whose testimony was heard was Mr. Maloney, an attorney of Ottawa, who, though not an attorney in the case, was an intimate personal friend of the decedent at the time of the transactions in question and so continued up to the date of the latter's death. Said witness was able to testify in relation to said transactions partly from personal knowledge and partly from repeated conversations with the decedent in relation thereto. His version of the transaction accords substantially with that stated by the Montgomerys in their answers. He also testifies to various conversations with the decedent not long prior to the latter's death, in which the decedent admitted that he had no interest in said lot and requested the witness to make out a deed conveying said lot from him to Mrs. Montgomery, but that such deed was not made out or executed, partly by reason of the witness' negligence, and partly because of the witness' suggestion that Mrs. Montgomery was contemplating a sale of the lot, and that in that case the deed might be made directly to the purchaser.

The doctrine of laches cannot be invoked as a bar to the equitable title of the Montgomerys, for the reason that they

are shown to have been in possession of said lot and in the receipt of the rents therefrom ever since the day of the sale. Maloney testifies that such was the fact, and there is nothing in the record tending to rebut his testimony in that respect.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*