<hr>

(No. 14914.—Reversed and remanded.)
LENA BROOKS *et al.* Appellants, *vs.* LENA GRETZ *et al.* Appellees.

*Opinion filed October 28, 1924.*

1. EQUITY—*a general demurrer should not be sustained merely because bill is verbose.* Where a bill contains sufficient allegations as to any subject matter to entitle the complainants to equitable relief, a general demurrer to the same should not be sustained although the bill contains much irrelevant matter.

2. TRUSTS—*when grantee will be regarded as a trustee for third persons.* Where property is conveyed to a grantee upon his parol promise to the grantor to convey the same to third persons upon the grantor's death, or upon his promise to hold the same for the benefit and use of other persons, a court of equity will raise a constructive trust and convert the grantee into a trustee for the benefit of such third persons.

3. SAME—*constructive trust may be proved by parol—Statute of Frauds.* The facts showing a constructive trust may be proved by parol evidence, as the Statute of Frauds does not apply to such a trust.

4. SAME—*when title of subsequent grantees is subject to trust.* Where title is taken by a grantee for the benefit of third persons and a trust is raised thereby, subsequent grantees who take title without consideration hold the title subject to the trust created by the conveyance to the first grantee.

5. DEEDS—*a deed conveys no title where grantee's name is inserted without consent of grantor.* Where a grantee's name is inserted in a deed after its execution and without the grantor's consent the deed conveys no title to said grantee nor to any other grantees who have notice thereof.

APPEAL from the Circuit Court of Cook county; the Hon. IRA RYNER, Judge, presiding.

D. B. BRILLOW, for appellants.

JOHNSON, MORAN, PALTZER & O'DONNELL, for appellees.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

On July 14, 1922, Lena Brooks, Florian Gretz, Frank J. Gretz and Eleanor Coleman, appellants, filed their amended bill in the circuit court of Cook county against appellees, Lena Gretz (their stepmother) and Catherine L. Ernst, to set aside a certain deed to lot 9, block 11, in Murphy's addition to Rogers Park, in Chicago, purporting to be made by Frank J. Gretz and wife to Catherine L. Ernst, and also all subsequent conveyances of said lot, and to re-vest title in Frank for the benefit of the appellants, and that lots 7 and 8 in said block, and all improvements thereon, be decreed to be held by Lena Gretz in trust for the appellants, and for an accounting for rents, and for other and further relief. Appellees filed a general demurrer to the bill, which was sustained, and the bill was dismissed for want of equity. The appeal is direct to this court.

Appellants are the living children of Ignatz Gretz and Anna Gretz, husband and wife, both deceased. Lena Gretz (formerly Lena McCall) is the second wife of Ignatz. Ap-

pellants as they arrived at the age of fourteen years, respectively, were emancipated by their father and ordered by him to find employment of their own and become self-sustaining. He agreed with every one of them, as they arrived at said age, that they might live and board with him provided they would each pay to him all their wages except about two dollars per week for their personal expenses, and that he would charge each one of them three dollars per week for board and would invest the remainder of their money for their use and benefit in interest-bearing securities. All of them, at his direction, secured for themselves employment as they became of the age of fourteen years and remained with him up to their majority and continued to live with him for a time after they had arrived at their majority, and continued during the whole time they were with him to pay him their wages, except two dollars thereof per week, under said agreement on his part that he would invest their wages as aforesaid, except three dollars per week for each of them, which he was to retain as a charge for their board. Their father until after the year 1903, and after they were of age and married, was a working-man, earning not to exceed $12 per week, and their mother was a sickly woman, not able to do her housework or aid him in earning money. Lena Brooks, born in 1871, at the age of fourteen years secured employment in a shoe factory at $15 per week and boarded with her father until she arrived at the age of eighteen years, and continued with him for more than three years thereafter under the agreement, and gave her father the total net sum above her board for investment, $1200 earned before she became of full age and $1600 afterwards. Florian Gretz, born in 1877, at the age of fourteen became an apprentice in a printing shop at an average wage of $15 per week until he arrived at the age of twenty-one years, and gave to his father, over and above the charge for his board during that time, for investment as aforesaid, the total sum of $3250,

and continued thereafter with his father until he had earned and paid to him for investment under the contract the further sum of $5000. In a similar manner Frank J. Gretz, born in 1879, and Eleanor Coleman, born in 1884, sought and obtained employment and remained with their father until and after they arrived at the age of their majority, and received from their employment and paid to their father over and above the charge for board, for investment under the agreement, the total sums of $5150 and $2000, respectively, a portion of the said total sums being for wages earned before and a portion thereof being for wages earned after they arrived at their majority. The total sum received from all of the appellants by their father under said agreement, for investment for their benefit in interest-bearing securities, was $18,200.

The further facts alleged in the bill and admitted by the demurrer are in substance the following: To secure to the appellants their interests in the trust fund which they had placed in their father's hands under the agreement, their father purchased property located on the north side of the city of Chicago, known and described as lot 9, in block 11, in Murphy's addition to Rogers Park, on May 21, 1906, and caused the deed thereto to be made to Frank J. Gretz, one of the appellants, and their father expressly told the appellants that he had caused the deed to be so made to Frank, and that he would cause him to execute the necessary papers so that in case of his death the property would be divided among all of the appellants as agreed or that the same would be sold and the proceeds thereof divided among them. The purchase price for said lot was paid out of the moneys held by Ignatz in trust. On the same day the deed was made to Frank he executed a trust deed to Norman Baird for part payment on the lot, which was later released upon the payment of the notes thereby secured out of the moneys held in trust for the appellants by Ignatz. It was during this same year 1906 that Ignatz ceased working at the posi-

tion he had theretofore held at a lumber yard and opened a box factory for the manufacture of boxes for truck farmers and gardeners. The money which he invested in opening the box factory and erecting a building for that purpose on lot 9 was money belonging jointly to the appellants and held by Ignatz in trust. For the foregoing reasons Frank J. Gretz entered into the business with his father and helped to build up the box manufacturing business until about the first day of July, 1908. About the date last named, Ignatz, being of about the age of sixty-two years, while his wife, Anna, was in the insane asylum at Elgin, became unduly in love with appellee Lena McCall, now Lena Gretz. Lena well knew all about the property rights of the appellants in lot 9 and in the other real estate held or purchased by Ignatz and of the fact that Ignatz held money of the appellants as trust funds under the agreement aforesaid. She also well knew the undue influence that she had and could employ in dealing with Ignatz, and with the fraudulent intent of obtaining for herself all of his property, including that which he held for the appellants, she caused Ignatz and others to enter into the following conveyances and transactions as to lot No. 9: On July 24, 1908, she had Ignatz obtain a purported conveyance by warranty deed from Frank J. Gretz to lot 9 after falsely informing Frank that the deed was made for the benefit and security of all the appellants and for the purpose of protecting their interests in case of the death of Frank, and that the deed only amounted to a declaration of trust. Believing said representations, Frank signed and acknowledged the deed, but in the deed no grantee was named or agreed on and there was no consideration paid to him by anyone for the signing thereof. Afterwards, and before the deed was recorded, the name of Catherine L. Ernst was written therein as the grantee without the knowledge or consent of Frank, and Frank had never known or had any dealings with Mrs. Ernst or any understanding that her name or the name of

any other grantee was to be written therein. On July 31, 1908, Mrs. Ernst and her husband, in furtherance of the fraudulent scheme aforesaid, executed a warranty deed to lot 9 to Lena McCall, which was executed without any consideration therefor, and which was later duly recorded without the knowledge or consent of Frank or of any of the appellants, and they never learned anything about inserting the name of Mrs. Ernst as the grantee, which they denounce as a forgery, and the execution of the deed by Mrs. Ernst and her husband, until after the death of their father, which occurred January 17, 1919. Frank J. Gretz at all times herein named has manifested his desire and willingness to carry out the trust impressed upon him by the conveyance of lot 9 to him, and expressly avers that he is still ready and willing so to do when the void instruments, which are clouds on the title to said real estate, are removed. While he was in the box manufacturing business with his father and occupying lot 9 for that business, he and his father entered into an agreement that his father was to pay, in consideration for such occupancy, all taxes, special assessments, etc., levied against said lot, and which he did pay.

On October 20, 1885, Ignatz Gretz invested $850 in the purchase of another piece of real estate not described in the abstract and caused the grantor to execute the deed to Anna Gretz, mother of the complainants, and to the complainant Lena Brooks, (then Lena Gretz,) with the understanding that the grantees were to hold the title to the property jointly for the benefit of Ignatz and Anna Gretz and all the complainants. Ignatz expended about $1000 in erecting a cottage upon the premises, into which the family, including the complainants, moved and occupied it as their home. During the year 1901 he also caused a three-story brick building to be erected on the premises, moving the cottage to the rear thereof, and the money which Ignatz paid for the erection of the brick building was spent from

the money held in trust for the complainants. Anna Gretz, mother of the complainants, became demented in 1888 and remained so until her death, March 9, 1911, and was confined in the State hospital. On July 2, 1890, Ignatz requested Lena Brooks to join with her mother in a conveyance of this last mentioned property to August Schaefers. This deed was without consideration and was made upon the representation of Ignatz that such conveyance would be necessary to protect the complainants and their parents from uncertain contingencies on account of the unsoundness of mind of Anna Gretz and any attachment under the dower and homestead laws of any prospective rights the husband of Lena might have. The father further represented that Schaefers was to hold such deed in trust, only, for the benefit of the complainants and their parents. Without the knowledge or consent of the complainants, on the same day last named Ignatz obtained a reconveyance of this property from Schaefers and his wife to himself, which was also without consideration. Less than six weeks after the death of their mother Ignatz married Lena McCall, now Lena Gretz, and on January 10, 1912, with full knowledge of all the foregoing facts, and with the same purpose and fraudulent intent with which she obtained title to lot 9, Lena conspired with Ignatz and caused him to unite with her in a deed to said undescribed property to Mrs. Ernst, and on January 11, 1912, caused Mrs. Ernst and her husband to convey this property to Ignatz and Lena Gretz in joint tenancy, said deeds being without consideration and for the purpose of defrauding the complainants. For the same fraudulent purpose, on June 22, 1916, Ignatz and his wife executed a warranty deed to this real estate to Guiseppi Turetta for the sum of $5500 paid to them. The complainants requested Ignatz to advise them how the money so obtained for this property was to be held or divided, and he informed them that the money would be held as a trust fund and that they would get their shares of the fund at his death; that

he would invest the money in improving lots 7 and 8, in block 11, in Murphy's addition to Rogers Park, which he had previously obtained by a contract and option, and for the improvement of lot 9, and that he would cause the deed to lots 7 and 8 to be made to Frank J. Gretz and cause him to execute the necessary papers so that in case of his death the property, or the proceeds thereof, would be divided among the complainants as already agreed. The complainants relied upon these representations of their father, fully trusting him because of the fact that he had previously executed to Frank a similar deed to lot 9. With the same fraudulent design Lena McCall had prior thereto, on September 27, 1909, by her undue influence caused Ignatz to have S. Rogers Touhy, the owner of lots 7 and 8, execute a warranty deed to said lots to her, which was duly recorded. Subsequently Ignatz improved the property by erecting a large and expensive building on lot 7 and paid for such improvements out of the trust fund he held for the complainants.

The final allegations in the bill as to lots 7, 8 and 9 are that Lena McCall, after her marriage to Ignatz Gretz, and on January 10, 1912, with full knowledge of all the facts aforesaid and in pursuance of the intent to defraud the complainants of all of their property rights, joined her husband in a deed, for which there was no consideration, to Catherine L. Ernst to all the lots to which she had obtained title before her marriage, to-wit, lots 7, 8 and 9, and on the following day, January 11, 1912, Mrs. Ernst and her husband conveyed all of the property to Ignatz and Lena Gretz in joint tenancy, without consideration and in pursuance of the fraudulent design aforesaid. After the death of their father the complainants called upon Lena to ask what arrangements had been made by their father whereby they might get their just shares in his estate, and they were informed by her attorney, who was with her, in answer to their inquiries, that the matter had been arranged, and that

as soon as possible the complainants would be called in for a settlement and that every one of them would get his just share in accordance with equity and that they would not lose anything on their savings placed in the hands of their father. The complainants believed the statement and relied thereon. Shortly before the filing of the bill herein they learned that Lena was intending to leave complainants without any consideration or settlement and that she had listed the real estate with real estate agents for sale, and that she is still attempting to sell all the property, and will do so unless prevented by a decree of the court. They further alleged that she refused to give them any information whatsoever concerning the real or personal property of the deceased; that she has caused an affidavit to be filed by her attorney in the recorder's office of Cook county setting forth and suggesting the death of Ignatz, thereby attempting to vest the absolute title to the premises in her, as surviving joint tenant. They did not learn the facts concerning the various conveyances and transactions aforesaid, brought about by the fraud of Lena, until after the death of their father and until after they had examined the record of the title to said lands. They further alleged that Lena is collecting the rents and profits from the real estate. They charge that she holds the same in trust for appellants and that she could not be made responsible for their rights by judgment.

The bill in this case covers about thirty typewritten pages in the record, and the allegations therein are so unnecessarily verbose and so inartificially arranged that we have been compelled to even read the bill in the record and give it close study to understand it. As we understand it, we have stated the substance of the allegations in the bill, and as stated we do not think the court was warranted in sustaining a general demurrer to it. The rule is well settled that if a bill contains sufficient allegations as to any subject matter to entitle the complainants to equitable relief, a

general demurrer to the same should not be sustained although it may contain a great deal of irrelevant matter.

The allegations in the bill as to lot 9, at least, are sufficient to entitle the appellants to equitable relief. Where property is conveyed to the grantee upon his parol promise to the grantor to convey the same to third persons upon the grantor's death, or upon his promise to hold the same for the benefit and use of other persons, a court of equity will raise a constructive trust and convert the grantee into a trustee for the benefit of such third persons. (*Stahl* v. *Stahl*, 214 Ill. 131; *Hilt* v. *Simpson*, 230 id. 170.) The facts showing the constructive trust may be proved by parol evidence, and are therefore not within the provision of the Statute of Frauds requiring the trust created to be in writing. *Hilt* v. *Simpson, supra.*

Under the allegations of this bill, the deed of Frank J. Gretz, in which the name of the grantee was inserted after its execution and without his consent or authority, conveyed no interest in the land. Besides, all subsequent grantees, according to the allegations of the bill, had notice of the trust with which the land was impressed when conveyed to Frank. All subsequent grantees of Frank, if their deeds were valid, would hold the title to lot 9 subject to the trust aforesaid, and for the further reason that they took title without consideration. It is sufficient to say, however, that the deed conveyed no title, which was made to a blank grantee and in which the grantee's name was afterwards inserted without consent or authority of the grantor, and all other grantees had notice thereof. *Donason* v. *Barbero,* 230 Ill. 138.

The judgment of the circuit court is reversed and the cause is remanded, with directions to overrule the demurrer to the bill.

*Reversed and remanded, with directions.*