## E. L. MATTSON AND OTHERS v. UNITED STATES ENSILAGE HARVESTER COMPANY AND ANOTHER.
## JULIUS ROSHOLT AND ANOTHER, INTERVENERS.[1]

May 6, 1927.

No. 26,016.

**All except statutory trusts abolished.**
   1. Trusts in both real and personal property are abolished except as authorized by statute.

**When consideration is necessary.**
   2. An executory trust requires a consideration; an executed trust does not.

[1]Reported in 213 N. W. 893.

**Definition of executed trust.**

3. Where the trust instrument vests title in the trustee and appropriates the property to the purpose of the trust and nothing remains to be done by the grantor, an executed trust is created.

**Certainty in respect to beneficiaries.**

4. The beneficiaries of a trust must be certain or capable of being made certain. Where they are limited to those who furnished uncompensated financial aid to the grantor for a specified purpose, they are capable of being made certain.

**Compliance with conditions precedent necessary.**

5. A beneficiary must comply with the conditions precedent prescribed by the trust instrument to acquire any rights under it.

**Provisions of statutory trust cannot be changed by parol.**

6. The provisions of a trust created under G. S. 1923, § 8090, subd. 6, cannot be changed by parol.

**Interveners not within benefit of trust.**

7. Where the trust instrument limits the beneficiaries to those who furnished uncompensated aid to a certain corporation, persons who sustained losses through indorsing notes and purchasing stock of another corporation which aided the first are not within its provisions.

Trusts, 39 Cyc. p. 28 n. 10; p. 41 n. 23; p. 42 n. 25; p. 43 n. 33; p. 59 n. 30; p. 82 n. 61; p. 196 n. 17; p. 199 n. 45; p. 200 n. 55 New; p. 894 n. 55 New.

─────────

See 26 R. C. L. 1168; 26 R. C. L. 1189; 4 R. C. L. Supp. 1701; 5 R. C. L. Supp. 1444; 6 R. C. L. Supp. 1589.

Action in the district court for Hennepin county to determine the rights of the plaintiffs and the defendant ensilage company under a trust agreement. Julius Rosholt and Rosholt Securities Company filed an amended complaint in intervention. They appealed from an order, Baldwin, J., sustaining the separate demurrers of the defendants to such amended complaint. Affirmed.

*Thompson, Hessian & Fletcher* and *Roberts, Strong, Myers & Covell,* for appellants.

*Patterson & Rorem* and *Oscar Hallam,* for defendants-respondents.

TAYLOR, C.

This is an appeal by the interveners from an order sustaining a demurrer to their complaint in intervention.

It appears from their complaint that defendant Ronning had invented and patented certain machinery and appliances for harvesting and converting forage plants into ensilage, and had granted an exclusive and perpetual license for the manufacture and sale of such machines and appliances to defendant United States Ensilage Harvester Company, of which he was president, and that this company (hereafter called the ensilage company for brevity) had entered into a contract with William A. Morgan by which Morgan was given the exclusive right to manufacture and sell these machines and appliances, and was to pay the ensilage company a specified royalty thereon. It appears from the complaint in the original action that whatever rights the plaintiffs may have are created by and rest upon a trust agreement executed by defendant ensilage company as party of the first part and by Frank G. Brooberg and defendant Ronning as trustees for all persons nominated as beneficiaries as parties of the second part. It also appears from the complaint in intervention that whatever rights the interveners may have are created by and rest upon this same trust agreement.

The defendants contend that the trust is invalid and unenforceable for several reasons; and further contend that even if the trust be valid, the interveners have not brought themselves within its provisions nor shown themselves to be beneficiaries under it.

The trust agreement recites the granting of the license to the ensilage company and the making of the contract with Morgan. It then recites that Brooberg "and other persons who may be nominated and admitted as beneficiaries under the trust hereinafter created" have furnished money, skill, labor and credit for the development of the machines and thereby have aided the party of the first part in developing them, and "claim and assert that they should have had a preference right, to manufacture said Harvesters under a license contract, from said party of the first part, in view of their expenditures on behalf of the said party of the first part, and also assert various other claims against said party of the first part."

It then recites that "the party of the first part recognizes certain moral obligations in the premises," and desires to have the continued goodwill and cooperation of Brooberg "and all the other beneficiaries hereunder," and that Ronning, "not interested in this trust as a beneficiary, is made a co-trustee hereunder, in order to insure the admission of proper beneficiaries and the just and equitable distribution of the monies to accrue to the beneficiaries admitted under the terms of this trust."

We have referred to only those portions of the recitals claimed to have a bearing in determining who are the beneficiaries and the nature and extent of their interests.

Following the recitals the agreement states that in consideration of the premises and of the mutual covenants and agreements therein set forth "the party of the first part does hereby assign, agrees to set aside, transfer, pay over, or cause to be paid over, and delivered, unto the said Trustees, * * * fifteen per cent of all Ensilage Harvester royalties received, * * * and such payments shall continue until there shall have been paid to said Trustees for the benefit of each of the beneficiaries admitted under this trust, a sum equal to the sums named in the certificates of beneficial interests issued by the trustees, to such beneficiaries, without interest, which sum shall be administered and distributed to the beneficiaries, present and future, under the terms of this trust, and from time to time, in the discretion of said Trustees, in equitable proportions, pro rata, according to the share of each beneficiary."

The agreement provides that "Brooberg, for himself, and all other persons, present or future, admitted under the terms of this trust as beneficiaries thereof, do hereby upon each of their acceptance of the beneficial shares so issued" surrender and release all claims against the party of the first part and the inventors of the patents except such "as may accrue to the trustees for the benefit of the beneficiaries under the provisions of this trust."

Instead of specifically designating those who are to be admitted as beneficiaries of the trust the agreement provides:

"Any person who shall assert a right to share in the benefits provided by this trust, shall submit to the trustees, in writing, a sworn statement, setting forth his or her claim to benefits hereunder within one year from date hereof, such statement shall set out fully the sums of money, credit advanced or skill and labor contributed for the development of said Ensilage Harvesters, and shall specify also, any sums of money, property, credits, or any other right or thing of value, received as an offset thereto in any manner, and if the trustees shall require it, such claimant applying for admission, as a beneficiary, shall also submit under oath, any other specific data requested by the said trustees, and thereafter upon the information thus submitted, the trustees shall investigate said claim and determine the sum, if any, to which said applicant shall be entitled to participate under the provisions of this trust.    The trustees shall act as a board upon all claims so submitted, and all applications submitted shall be for final determination by the board, the unanimous decision of the trustees upon the minutes of the trustees in writing signed by the trustees shall be final, conclusive and binding, upon all claimants submitting their claims for determination.    The trustees shall have power to determine all questions with reference to admission of beneficiaries or the administration of this trust.  *  *  *

"Upon the admission of a beneficiary, the trustees are directed to issue forthwith a certificate for a beneficial share of trust estate, for the purpose of defining the share or interest of the beneficiary hereunder, which said certificate shall be negotiable, and substantially in the form hereto annexed  *  *  *.

"The trustees in their collective capacity shall be known as the Ronning Harvester Trust estate, and under that name so far as is practicable they shall conduct the business of the trust and execute all instruments in writing  *  *  *.

"The trustees shall hold the legal title to all property at any time belonging to their trust, and they shall have and exercise at all times, the exclusive control and management thereof.  Ownership of beneficial shares shall not entitle the shareholder to any title or undivided interest in the trust estate property."

[1]   Trusts in personal property as well as in real estate are abolished except as authorized by G. S. 1923, c. 60. Shanahan v. Kelly, 88 Minn. 202, 92 N. W. 948; City of Owatonna v. Rosebrock, 88 Minn. 318, 92 N. W. 1122; Congdon v. Congdon, 160 Minn. 343, 200 N. W. 76. The trust here in question rests upon G. S. 1923, § 8090, subd. 6, which provides that a trust may be created

"For the beneficial interests of any person or persons, whether such trust embraces real or personal property or both, when the trust is fully expressed and clearly defined on the face of the instrument creating it."

[2]   Defendants contend that the trust in question is executory and void for want of a consideration to support it.

An executory trust, like any other executory contract, requires a consideration to support it; but an executed trust is valid and enforceable without a consideration. 26 R. C. L. 1186, § 23; 39 Cyc. 41, and citations. While all the authorities recognize the distinction between executed and executory trusts, they differ somewhat as to the characteristics which determine whether a given trust falls within one or the other of these classes.

[3]   We are of opinion that the instrument executed by the ensilage company created an executed, as distinguished from an executory, trust. The company made a present assignment to the trustees of the specified fund, and agreed to pay it over to them as it accrued. Nothing remained to be done by the company to divest itself of the title to this fund or to vest title in the trustees for the purposes of the trust. 1 Perry, Trusts, §§ 98, 100; 3 Pomeroy, Eq. (4 ed.) § 1001; 26 R. C. L. 1192; 39 Cyc. 28; 34 Am. St. note at page 199.

[4]   Defendants further contend that the beneficiaries are uncertain and that the trust is void for that reason. It is settled that the beneficiaries must be certain or capable of being made certain or the trust fails. Shanahan v. Kelly, 88 Minn. 202, 92 N. W. 948; Watkins v. Bigelow, 93 Minn. 210, 221, 100 N. W. 1104; Bemis v. N. W. Trust Co. 117 Minn. 409, 413, 135 N. W. 1124; 26 R. C. L. 1189. The beneficiaries need not be designated by name, but they

must be pointed out in some manner with such clearness and definiteness that they can be identified. A class may be named as beneficiaries but must be defined so that those within the class may be determined with certainty. Egleston v. Trust Co. 147 Ga. 313, 93 S. E. 878, 3 A. L. R. 295, and annotation; also cases in this state previously cited. But the trust should be sustained if permissible under a fair and reasonable construction of the instrument. Atwater v. Russell, 49 Minn. 57, 51 N. W. 629, 52 N. W. 26. In the instrument in controversy there is no designation of beneficiaries except as a class, and the present question is whether it furnishes a guide or test by which those within the class may be ascertained. The class is limited to those who aided in the development of the machines, and for the purpose of sustaining the trust, the class may reasonably be further limited to those who furnished financial aid in labor, money or credit to the ensilage company over and above the amount of any "money, property, credits, or any other right or thing of value, received as an offset thereto."

[5] As thus limited those within the class are capable of being ascertained. But by the terms of the instrument a person within the specified class is entitled to share in the trust only on the condition that he shall file a sworn statement of his claim with the trustees within one year from the date of the trust instrument; and on the further condition that the trustees shall find and determine that he is entitled to share therein, in which event they are to determine and fix the amount he is entitled to receive and issue him a certificate therefor in a prescribed form; and on the further condition that upon the acceptance of this certificate he shall surrender and release all other claims against either the ensilage company or the inventor. These are conditions precedent and must be complied with or he acquires no rights under the trust.

[6] The plaintiffs in the action did not file their claim until long after the year had expired. The interveners filed their claim within the year, but the claim as it appears in the record is not sworn to and hence does not comply with the requirements of the trust. The statute provides that the trust must be "fully expressed and clearly

defined on the face of the instrument creating it," thus precluding any oral change, modification or waiver of its provisions or requirements.

[7]    The claim filed by the interveners is addressed:

"To A. G. Ronning & F. H. Brooberg, Trustees of Fund established for purpose of recouping losses sustained by stockholders of the American Harvester Company."

It states that the items listed are losses "due to purchase of stock of the company, loaning it money and endorsing its notes." It is composed entirely of a list of losses on notes indorsed for the American Harvester Company and of losses on stock of that company. The American Harvester Company is a corporation entirely separate and distinct from the ensilage company, and losses of its stockholders are not provided for nor covered by the trust instrument. The complaint in intervention does not disclose the financial condition of this company nor the extent of its business, but does allege that it "was engaged in the business of the development of said ensilage harvesters and the patents described in said trust agreement within the meaning of said trust agreement and that the moneys and credit advanced by these plaintiffs [interveners] as described in the foregoing statement of claim were actually used by the American Harvester Company, * * * in the development of said ensilage harvesters and the patents described in said trust agreement."

The complaint in intervention further alleges that the trustees refused to investigate the claim of the interveners or to take any action upon it.

The trust instrument provides that the trustees shall determine whether an applicant is entitled to be admitted as a beneficiary, and the sum, if any, to which he is entitled, and makes their decision final and conclusive. To what extent and within what limits the one who creates a trust may confer upon the trustees the power to select or determine those who shall be admitted as beneficiaries is a question on which the courts differ. But here the trust instrument having, in effect, defined the beneficiaries as those persons who

had furnished uncompensated financial aid to the ensilage company in the development of the machines, we think it was competent to confer upon the trustees the power to ascertain and determine the particular persons who had furnished such aid, and to make their decision final in the absence of bad faith or manifest error.

If the American Harvester Company could have brought itself within the class of beneficiaries, it made no attempt to do so. Why it made no claim does not appear. It may have concluded that it was not entitled to share in the trust. It may have had other claims which it was unwilling to relinquish for such benefits as it might obtain under the trust. But conceding that through the use made of its funds the harvester company would have been within the class of beneficiaries if it had elected to present its claim, the individual creditors and stockholders of the harvester company would not be entitled to be admitted as beneficiaries for losses sustained through indorsing the notes or purchasing the stock of the harvester company. Losses resulting from dealings with another company are not within the provisions of the trust created by the ensilage company, and if they were to be deemed as included it would probably make the trust void for uncertainty. As the claim of the interveners includes only such losses, the trustees were justified in refusing to consider it.

We note that it does not appear from either the original complaint or the complaint in intervention that any machines have been manufactured under the patents, nor that any royalties have accrued, nor that the trustees have, or are about to have, any funds whatever for distribution; also that it does not appear that the interveners have released, or offered to release, the claims, if any, which they may have against the ensilage company.

We concur in the view of the learned trial court that the complaint in intervention failed to state a cause of action, and the order sustaining the demurrer is affirmed.