In re Estate of Leo Quick, Deceased.
Alma Quick and Alice Classen, Administrator de bonis non of Estate of Leo Quick, Deceased, Appellees, v. Rachel Quick, Appellant.

Term No. 47,016.

Opinion filed February 25, 1948.    Released for publication March 23, 1948. .

JOHNSON & JOHNSON, of Belleville, for appellant.

RALPH D. WALKER and JAMES W. GRAY, both of East St. Louis, for appellee.

MR. PRESIDING JUSTICE BARTLEY delivered the opinion of the court.

Petitioner, Alma Quick, widow of Leo Quick, filed her petition for citation to show cause in the probate court of St. Clair county, in the estate of Leo Quick directed to Rachel Quick, mother of the deceased, wherein she set forth that Rachel Quick wrongfully held certain shares of stock which were rightfully an asset of the estate. The petition alleged that Rachel Quick had obtained. the stock from the administrator, Alice Classen, through an order of the probate court dated September 29, 1944, and that said order was void because the court had no jurisdiction to enter the order, and that Rachel Quick had perpetrated a fraud upon the court in obtaining the same. The probate court denied the relief sought by petitioner, which was to set aside the order of September 29, 1944, and to have Rachel Quick show cause why she should not surrender the shares of stock to Alice Classen, administrator *de bonis non,* to be an asset of the estate and other relief. On appeal to the circuit court of that county, the trial court on March 11, 1947, held that the equities were with petitioner, Alma Quick and Alice Classen, administrator *de bonis non,* of the estate of Leo Quick, and voided and set aside the probate court order of September 29, 1944. It directed Rachel Quick to pay to Alice Classen, administrator *de bonis non,* the sum of $3,400 and further directed that Rachel

Quick present satisfactory evidence to the court that she has paid or assumed a $3,000 mortgage, and that she has complied with the terms of a stipulation entered into between Rachel Quick and Alma Quick on October 11, 1938, which was made of record in the probate court.

This is an appeal from that order.

The litigation here arose out of the estate of Leo Quick who was killed in March 1938. He left surviving him, his widow Alma Quick, petitioner herein, his mother and father, Rachel and Dan Quick as well as some brothers and sisters. Petitioner was appointed administratrix of his estate, he having died intestate, and the inventory filed by her showed ownership of two pieces of real estate, one referred to as the Schwab farm or Mascoutah property, on which decedent's father and mother were living, and the other referred to as the Lebanon property. Among the personal chattels inventoried were 50 shares of Blair-Tirrel Boiler Company stock valued at $2,500. These are the shares of stock with which this litigation is concerned.

The title to the Mascoutah property was carried by the deceased in the name of his mother and father, and sometime before he died, the title was placed in the deceased's name. During the time the title was in his parents' name, a $3,000 mortgage was placed on this property, which was executed by the deceased's mother and father. The loan was made by the deceased so that he could loan it to the Blair-Tirrel Company, in which he owned half of the stock which was represented by the 50 shares in controversy here.

The deceased had a deposit box in the Mascoutah bank and his mother, Rachel Quick, had a joint right in the box. The stock, which was issued in the name of William L. Walter for accommodation to the deceased, and indorsed in blank by William L. Walter, was deposited in the deposit box in the Mascoutah bank by the deceased. After Leo Quick died, his

widow, petitioner herein, took the Blair-Tirrel Company stock and inventoried it in the estate. The stock was taken in the presence of Rachel Quick, the mother, and there is some question about whether or not the mother protested petitioner taking the stock. The mother states that she protested the removal of the stock and petitioner claims she did not protest. There was some testimony on behalf of Rachel Quick to the effect that the deceased, Leo Quick, had made a statement to his friend, William L. Walter, that he was depositing the shares of stock in the safety deposit box belonging jointly to himself and his mother, for the purpose that his mother would be taken care of with reference to the mortgage on the Mascoutah property.

On August 11, 1938, petitioner, Alma Quick, and deceased's mother, Rachel Quick, made a settlement of their disputes concerning the assets in the estate, and arrived at a division of property. This settlement agreement was dictated to a court reporter of the probate court in the presence of the interested parties and their attorneys, and was made a part of the court files. It provided that the mother, Rachel Quick, was to have the Mascoutah property and was to assume the mortgage and pay the petitioner, Alma Quick, the sum of $400; the widow, Alma Quick, was to have the Lebanon property, two vacant lots, a Plymouth truck and the $400 mentioned above. The necessary deeds to effect the conveyances of the properties mentioned in the agreement were later executed and delivered.

On March 26, 1941, Rachel Quick filed a petition for citation in the probate court, in which she stated that at the time of his death, Leo Quick had in his possession, 50 shares of Blair-Tirrel Company stock which was her property. The petition prayed that citation issue to Alma Quick, administrator, to show cause why she should not turn these shares of stock over to her. It appears that Alma Quick moved to St. Louis, Mo., in 1940 or 1941, and that the citation was never served

on her. On April 1, 1942, Rachel Quick filed a claim against the estate, in which she set forth that she and her husband borrowed the sum of $3,000 for Leo Quick at his request, and placed a mortgage on their real estate, and that at the time of the loan to her son, he deposited with her, 50 shares of Blair-Tirrel stock as collateral; that the loan had not been paid and that Alma Quick had the shares of stock and that the estate was indebted to her for $3,000 with interest. This claim has not been acted upon.

The petitioner, Alma Quick, was removed as administratrix on March 14, 1944, and on March 24, letters of administration *de bonis non,* were issued to Alice D. Classen, public administrator. The shares of stock in question were turned over to Alma Quick's attorney, shortly after she received them from the deposit box and her attorney subsequently turned them over to the public administrator upon her appointment. The hearing on Rachel Quick's petition was set for July 31, 1944, and the attorney for Alice Classen, public administrator, was notified. On the hearing date, Rachel Quick introduced her evidence and the cause was continued for the administrator's attorney to notify Alma Quick who was the party having the beneficial interest in the estate. It appears that attempts were made to notify Alma Quick of the hearing through her attorneys and by letter, and that she actually had no notice of the hearing. The hearing proceeded on the petition which was filed on March 26, 1941, without change, and on September 29, 1944, the probate court entered an order finding that the deceased, Leo Quick, had at the time of his death, possession of 50 shares of capital stock of the Blair-Tirrel Boiler Company, which was the property of Rachel Quick, and that said stock was in the possession of Alice Classen, administratrix. The court ordered that Rachel Quick was entitled to receive such certificates of stock and Alice Classen, administratrix, was ordered to deliver the same to her. The

probate court did not know of the settlement agreement between Rachel Quick and Alma Quick when the above order was entered and petitioner claims that Rachel Quick perpetrated a fraud upon the court in procuring said order since the indebtedness upon which her claim or demand was based, had been compromised and settled by the agreement.

It appears that subsequently Rachel Quick sold the stock and received the sum of $3,950 in payment of the same, $500 of which sum was turned over to a creditor of the estate in payment of his claim.

The paramount question before this court and the only one which need be considered, is whether or not the probate court had jurisdiction to enter the order of September 29, 1944. Respondent, Rachel Quick, contends that there is ample statutory authority in the probate court to hear and determine ownership of personal property upon petition of an adverse claimant; that paragraph 368 of the Probate Act [Ill. Rev. Stat. 1947, ch. 3, par. 368; Jones Ill. Stats. Ann. 110.465] empowers the court to direct an administrator to compound or compromise any claim or interest of decedent in any personal estate, and that par. 371 of the Probate Act [Ill. Rev. Stat. 1947, ch. 3, par. 371; Jones Ill. Stats. Ann. 110.468] authorizes the court to direct the administrator to perform a contract made by a decedent and that the authority of the probate court in entering the order of September 29, 1944, was derived under the above mentioned paragraphs of the Probate Act. We are of the opinion that respondent's petition, which in effect was a petition to determine the ownership of the 50 shares of stock in controversy here, did not come within the meaning of the statutory provisions empowering courts to direct administrators to compound or compromise any claim or interest of decedent in any personal estate or to direct the administrator to perform a contract made by the decedent.

The petition filed by respondent, Rachel Quick, was to determine the ownership of the stock and the order of September 29, 1944 of the probate court, found the stock to be her property. The court ordered the administrator to deliver the same to the respondent. The probate court determined the title to personal estate held by the administrator as an asset of the estate upon petition of an adverse claimant to the estate. In our opinion the probate court did not have the authority to do this and its act in this respect was beyond the jurisdiction of the court.

The State constitution, under sec. 20, art. 6, provides that the General Assembly may provide for the establishment of probate courts which shall have original jurisdiction of all probate matters, the settlement of estates of deceased persons, etc. It is not necessary that there be grant of authority by the constitution to the legislature to vest such power in probate courts. The legislature has that authority, unless there be a denial of it expressed or implied. A State constitution is a limitation upon the powers of the legislature and the legislature possesses every power not delegated to some other department or expressly denied to it by the constitution. (*Winch v. Tobin,* 107 Ill. 212, at page 215; *Field v. People,* 2 Scam. 79 at page 96.) In order for the probate court to have jurisdiction of the proceedings of the respondent to determine the ownership of the stock in controversy here, there must be some authority granted by statute authorizing such a proceeding. (*Morgan v. Hoyt,* 69 Ill. 489; *Newell v. Montgomery,* 129 Ill. 58; *Kingsbury v. Powers,* 131 Ill. 182 at page 194; *In re Miller's Estate (Johnson v. Miller),* 311 Ill. App. 280.) There is no statute authorizing the probate court to enter the order of September 29, 1944, and we consider said order to be null and void since the court had no jurisdiction over the subject matter here.

We find that the circuit court of St. Clair county was correct in entering its order of March 11, 1947, wherein it voided and set aside the probate court order of September 29, 1944, and we find that the sum of money to be paid by respondent, Rachel Quick to Alice Classen, administrator *de bonis non,* of the estate of Leo· Quick, deceased, should be the sum of $3,450 instead of $3,400 because of an error in substraction. As to the portion of the order of the probate court which directed that appellant, Rachel Quick, present satisfactory evidence to the court that she has paid or assumed a $3,000 mortgage and that she has complied with the terms of the stipulation entered into between her and Alma Quick, in our opinion the circuit court erred inasmuch as in the proceeding it could only exercise such power as could the probate court from which the appeal to it had been prosecuted.

The cause is reversed for further proceedings in accordance with this opinion.

*Judgment affirmed in part and reversed in part.*

It is hereby ordered that the above and foregoing opinion be and the same is hereby adopted as the opinion of this court and the judgment of the circuit court of St. Clair county is affirmed in part and reversed in part.