## EDGERTON v. JOHNSON.
### No. 9906.

United States Court of Appeals
Seventh Circuit.

Dec. 7, 1949.

Egbert Robertson, Edmund L. McGibbon, Chicago, Illinois and W. H. F. Millar, Waynesville, N. C., for appellant.

Lon P. MacFarland, Columbia, Tennessee, Frank H. Madden, Arthur E. Nelson, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, DUFFY and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

From a judgment directing the defendant, Victor S. Johnson, Jr., Administrator de bonis non of the Estate of Victor S. Johnson, Deceased, to deliver to the plaintiff 933 ⅓ shares of common stock of Tennessee Gas Transmission Company, plus the dividends received thereon, adjudging costs against defendant and awarding plaintiff execution therefor, defendant appeals.

In the complaint, the Administratrix of the Estate of John E. Edgerton, Deceased, sought to have established a trust and to recover from Johnson's administrator 700 shares of the Tennessee Gas Transmission Company, part of 30,000 shares delivered to Johnson by the corporation in trust for himself and others, as plaintiff alleged, Edgerton's share being 1,000 shares, later, by recapitalization, reduced to 700 shares and still later, by further capital adjustment, increased to the number mentioned in the judgment. Plaintiff averred that the stock was issued to and held by Johnson, not as his own but as trustee, and that defendant, as successor trustee, holding the same stock, upon the same trust, should be required to deliver to the estate of Edgerton the shares of stock thus held for him and ultimately awarded plaintiff.

The facts, as found by the court in its extended memorandum and findings of fact, follow. Early in 1938, Edgerton became associated with others in a concerted project, the original purpose of which was to bring natural gas into Tennessee, Edgerton being selected as the head of the undertaking. He resigned as President of the Southern Industrial Council and, thenceforth until his death, gave all of his time to the project. While still actively engaged in the promotion, he died, in August, 1938. Subsequent to his death, Johnson and other persons associated with him continued with the development work instituted by Edgerton and eventually brought about incorporation of Tennessee Gas and Transmission Company. It was agreed among the corporate directors and Johnson that all persons actively interested in the project would devote their time and efforts, with the understanding that all would be compensated if and when the undertaking ripened into successful completion.

On May 4, 1940 the directors held a meeting for the purpose of issuing certain stock to the persons who performed services and spent moneys for and on behalf of the corporation, beginning with the original promotion. Johnson, though not a

member of the board, was regarded by all parties in interest as the dominant figure in the setup and a man of recognized ability, with many contacts and in position to be of great service to the corporation, and attended the meeting. In order to carry into full realization the purpose of the entrepreneurs, it was apparent that substantial amounts of capital would have to be procured and necessary authorization from the Federal Power Commission obtained.

Johnson proposed to the board that the stock to be issued in consideration of services rendered and money advanced, be issued to him to use, first, for accomplishing the purpose of attracting the necessary capital for financing the corporation in the immediate future and further promotion of its purpose, and that certain shares then remaining be redistributed by him to those who had theretofore expended time and money in developing the project. Thereupon the directors adopted a resolution by which 30,000 shares of common stock were issued to Johnson "for himself and others" to be delivered to him or his order, the only consideration for which was moneys advanced and services rendered by himself and other promoters, including Edgerton. The shares were then issued to Johnson for himself and others who had done work and spent money on the corporate enterprise for the purpose of, first, bringing necessary capital into the corporation and promoting its business and, secondly, distributing what remained among those who had performed services and spent money for and on behalf of the corporation from the beginning, including Johnson and Edgerton. Johnson was given power to determine which of those, including himself, who had advanced money and rendered services, should participate in the distribution of the remaining stock and in what proportion.

Subsequent to August 1940, prior to his death, Johnson, in recognition of the fact that the stock had been issued to him in trust, caused some 14,000 shares to be redistributed to various persons. On January 30, 1943, in a hearing before the Federal Power Commission, testifying in behalf of the corporation, he again recognized the trust and stated that 1,000 shares would have to be distributed to the representatives of the estate of Edgerton. At the time of his death, shortly later, Johnson was in possession of a balance of 16,405 of the original 30,000 shares and these, on September 20, 1943, were transferred to his administrator.

Plaintiff first learned of the death of Johnson in the year 1946 and thereupon wrote to defendant requesting transfer to her of the shares of stock claimed. Various other facts were found by the trial court but we think their repetition is unnecessary.

The court adopted conclusions of law that the 30,000 shares were issued to and held by Johnson for himself and others in trust for a specific purpose and were not assets belonging to his estate; that defendant is not accountable in any way to the Probate Court therefor; that that court is without jurisdiction to declare the existence of a trust of the nature involved and has no jurisdiction over property belonging to strangers to the probate estate or any power of supervision of or control over trusts; that plaintiff is not a creditor of Johnson and asserts no claim against assets belonging to his estate; that the action is not barred by the "non-claim" statute of Illinois or by laches; that the resolution mentioned was not a complete expression of the intention of parties; that the court had the right to consider all the evidence in order to determine the real interpretation and limitations of the trust; that, in doing so, the court might properly look to the resolution, the relationship of the parties and their conduct, prior and subsequent to the passage of the resolution, and consider all other circumstances in evidence throwing light upon the terms of the trust; that a trust of personal property may be created by parol; that it may be created for the benefit of the members of a defined or ascertainable class of persons, whose identity can be established by the facts; that the trustee in a trust created for the benefit of certain members may be authorized to select which of them shall take and in what proportion; that plaintiff has proved all of the material allegations of her complaint; that she has shown the intent of the parties to create a trust and its actual

establishment; that, in view of all the evidence, the stock was issued to Johnson in trust, for himself and others; that, when the 30,000 shares of stock were issued to Johnson as trustee, the "others" were those persons who had performed valuable services in promoting the project; that Edgerton was a member of that group, and, finally, that plaintiff was entitled to have the shares transferred to her as beneficiary of the trust. Judgment to that effect followed.

Defendant contends that in this review the court is not limited by Federal Rule of Civil Procedure 52(a), 28 U.S.C.A.; that, even though the District Court had jurisdiction to determine, in an equity case, based on diversity of citizenship, whether Johnson held stock subject to duties as trustee for the benefit of plaintiff's decedent, it had no power to direct his administrator to turn the stock over to plaintiff or to compel the latter to pay to plaintiff money received by him by way of dividends, and that the evidence discloses that plaintiff's claim is at best based on an executory promise without consideration, fails to show that a trust was intended or created and does not identify the subject matter or the beneficiaries.

In his reply brief defendant says: "This question of the jurisdiction of the Probate Court is not directly involved here, since we have not contended that the District Court of the United States was without jurisdiction, but have contended, and do now claim, that the decree exceeded the authority of that court." Accepting this statement at its face value, it would seem that there is eliminated from consideration upon review any question as to whether the District Court, sitting as a court of equity, had the power to entertain and determine the suit.

■ That the Probate Court did not have jurisdiction of the cause, we think, is clear under the Constitution and decisions of Illinois. Section 20, Article VI of the Constitution, Smith-Hurd Stats.Ill., is as follows: "Said courts, when established, shall have original jurisdiction of all probate matters, the settlement of estate of deceased persons, the appointment of guardians and conservators, and the settlement of their accounts; in all matters relating to apprentices, and in cases of the sale of real estate of deceased persons for the payment of debts." The Probate Court, therefore, possesses no jurisdiction over property of others and has no power to declare the existence of a trust or to supervise or control a trust. In re Estate of Mortensen, 248 Ill. 520, 94 N.E. 120, 21 Ann.Cas. 251. And it has been held that the court has no jurisdiction to determine ownership of property upon petition against the administrator. In re Estate of Quick, 333 Ill.App. 573, 78 N.E.2d 26. A case illustrative of the exercise of jurisdiction by a court of equity to declare and enforce a trust against the estate of a deceased person is Cusack v. Cusack, 253 Ill.App. 288; Id., 339 Ill. 108, 170 N.E. 841. Chapter 3, Section 359 of the Illinois Revised Statutes in defining the jurisdiction of the Probate Court provides: "The provisions of this Article relating to the jurisdiction of the probate court over claims against estates, shall not be construed to exclude the jurisdiction of other courts." 1939, July 24, Laws 1939, p. 4, Sec. 207.

■ Here plaintiff did not seek to recover any part of the decedent's estate. She sought rather to charge the administrator as successor trustee. In other words, her position was that when Johnson died he had in his hands trust property belonging to plaintiff and that his administrator, succeeding to the decedent's legal title, was charged with the same trust and liable to the same extent, as the decedent. That this is a correct legal position is apparent from the decisions. Thus, in Illinois, "upon the death of the trustee without having accounted to the beneficiary the burden of making such an accounting falls upon the executor of his will who receives the property." Cusack v. Cusack, 253 Ill.App. 288, citing Breit v. Yeaton, 101 Ill. 242 and Maher v. Aldrich, 205 Ill. 242, 68 N.E. 810. The Cusack case was reversed on other grounds in Cusack v. Cusack, 339 Ill. 108, 170 N.E. 841; Velde v. Reardon, 322 Ill. App. 177, 54 N.E.2d 91.

■ In Kinney v. Lindgren, 373 Ill. 415, 26 N.E.2d 471, the court held that where a trustee who is defendant in an action for breach of trust dies while the suit is pending it is proper to substitute

for him the executrix of his estate. The true owner of a fund wrongfully held by another has a right to have it restored not as a debt due and owing but because it is the property of the true owner and no change in its state and form can divest it of such trust. People ex rel. Barrett v. State Bank of Herrick, 290 Ill.App. 130, 8 N.E.2d 71. Property which has been appropriated by others and upon which a trust has been fixed may in equity be followed either in the original or altered form so long as it can be identified and superior rights of third parties have not intervened. Winger v. Chicago City Bank & Trust Co., 394 Ill. 94, 67 N.E.2d 265, reversing 325 Ill.App. 459, 60 N.E.2d 560. See also Brooks v. Gretz, 313 Ill. 290, 145 N.E. 96; Breit v. Yeaton, 101 Ill. 242 and Maher v. Aldrich, 205 Ill. 242, 68 N.E. 810. As a general rule the common-law rule that a personal cause of action dies with the person, does not apply to causes of equitable cognizance, and equitable remedies exist to the same extent against executors and administrators as they did against decedent. 1 Corpus Juris Secundum, Abatement & Revival, § 134, p. 182. Consequently the conclusion of the court that the defendant, as administrator of the estate of the trustee, became charged with the duty of a trustee as to the property held in trust by the decedent is entirely sound.

Under Rule of Civil Procedure, 52 (a), it is our duty to accept the District Court's findings of fact unless clearly erroneous. After careful examination of the record we think it beyond question that the evidence submitted to the chancellor adequately and amply supports his findings of fact. The court, in determining that a valid trust existed, as it was entitled to do, considered not only the resolution authorizing the issuance to Johnson for himself and others of the 30,000 shares, for the benefit of those who had contributed time and effort in the early days of the promotion, but also the statements, acts and conduct of the interested parties and Johnson's sworn testimony that he held stock for the benefit of others, including, specifically, 1,000 shares for Edgerton's estate.

In view of defendant's assertion that the evidence reflects merely a parol promise on Johnson's part to deliver stock to Edgerton without consideration, we have examined the record and find evidence because of which we can not say that it was clearly erroneous to conclude that the transaction far exceeded any parol promise but amounted in law to a clearly established trust in which Johnson was trustee for himself and an identifiable class of other beneficiaries.

However, defendant asserts certain specific insufficiencies in the proof in this respect. He insists that there is uncertainty as to the beneficiaries and as to their shares in the trust estate. There is no question that the members of a definite class of persons or members of a class who can readily be identified may properly be made the beneficiaries of a trust, or that a trust may be created for the benefit of a class of persons, although, by the terms of the trust, the trustee is authorized to select which of the members shall take and in what proportions. Restatement of the Law of Trusts, Sections 120, 121 and 122. The Restatement asserts that this is true whether the trustee has discretion only as to how much of the trust property each member of the class shall receive or has discretion to exclude some members of the class altogether. The compilers include extended comment to all of which it is unnecessary to refer. One significant statement is: "The mere fact that a member of the class may ultimately take nothing does not prevent him from maintaining a suit to redress or enjoin a breach of trust, since each of the beneficiaries is in this position, and if none could maintain a suit the trustee might commit a breach of trust with impunity." See also Bogert on Trusts and Trustees, 1935, Volume 1, § 162, p. 470; Scott on Trusts, Paragraph 120. The law of Illinois, we think, is in accord. Wetmore v. Henry, 259 Ill. 80, 102 N.E. 189, Ann.Cas.1914C, 247; Booth v. Krug, 368 Ill. 487, 14 N.E.2d 647, 117 A.L.R. 1193; Burke v. Burke, 259 Ill. 262, 102 N.E. 293. See also Mattson et al. v. United States Ensilage Harvester Company, 171 Minn. 237, 213 N.W. 893. And there seems to be no question but that one of several beneficiaries of a trust may be the sole trustee. Wetmore v. Henry, supra. No particular

form of words or conduct is necessary for the manifestation of an intention to create a trust and, unless restricted by statute, a trust may be manifested by either written or spoken words or by conduct. Restatement, Paragraphs 24–39.

Defendant objects to those portions of the judgment taxing costs and directing execution against him. We know of no reason why, in a suit to enforce a trust against a trustee who resists enforcement, the trustee may not be taxed with costs. To do so, we think, is clearly within the discretion of the chancellor. As to the award of execution, it is clear that, in a suit against an administrator as such to recover from the estate, costs taxed against him as such are payable only in due course of administration. But this is not an action against an administrator in his capacity of administrator of property belonging to the decedent; it is an action against the defendant as administrator because as such administrator and therefore as successor trustee he holds property belonging to others. He is ordered to deliver trust property to a beneficiary of the trust and to pay her certain dividends received. He is liable not because recovery will come out of the estate but because he is a successor trustee who has resisted payment. Consequently, the words describing him as administrator de bonis non of the estate of Victor S. Johnson, deceased, are merely descriptive of his real liability in equity as successor trustee.

The judgment is affirmed.