Harold Cusack, Appellant, v. Thomas Cusack, Jr. et al., Appellees.

Gen. No. 33,129.

Opinion filed May 29, 1929.

KELLY & MURPHY, for appellant; JOHN E. KELLY and FRANK F. TRUNK, of counsel.

MAYER, MEYER, AUSTRIAN & PLATT, for certain appellees; ABRAHAM MEYER and FREDERIC BURNHAM, of counsel.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

This is an appeal from a decree of a chancellor of the superior court of Cook county dismissing complainant's bill for want of equity.

On December 27, 1926, complainant, Harold Cusack, filed his bill against Thomas Cusack, Jr., and Charles E. Cusack, individually and as executors of the will of Thomas Cusack, Sr., deceased, Francis J. Cusack, Anna M. Cusack Johnson, and Jane Evelyn Cusack, being the five surviving children of Thomas Cusack, deceased, and the Illinois Merchants Trust Company, individually and as trustee under the Cusack will.

Complainant alleges that he is 33 years old and that the five Cusack defendants are all adults; that complainant when he was 4 years old was taken into the home of Thomas Cusack, deceased, and lived with him as a member of his family from 1898 to 1916; that in 1913 he entered the employ of the Thomas Cusack Company, in which Thomas Cusack, deceased, was heavily interested as a stockholder, and that he finally became a director and vice president of the company and was the owner of 3,802.71 shares of the capital stock of said company; that on September 19, 1924, the market value of said stock was $380,277; that Cusack's five children also owned stock in the company, Thomas

Cusack, Jr., being the owner of 3,670 shares; Charles E. Cusack 3,500 shares; Francis J. Cusack 3,500 shares; Anna M. Cusack Johnson 4,500 shares and Jane Evelyn Cusack 3,525 shares; that Thomas Cusack, the father of said children, was the owner of 10,995.13 shares; that the aggregate value of all of said stock was on the last-mentioned date $3,349,277; that on said September 19, 1924, complainant and the five children executed and delivered to said deceased the following document:

"We and each of us do hereby authorize Thomas Cusack, Sr., to act for us in our behalf in connection with the sale of certain stock of the Thomas Cusack Company, now standing in our names and of which we are the owners, hereby ratifying and confirming all that he may do by virtue hereof.

"In Witness Whereof we have hereunto set our hands and seals this 19th day of September, 1924."

That acting under such authority Thomas Cusack, Sr., sold all the stock of complainant and his five children for $100 per share; that a check was made by the purchasers of the stock to the order of complainant for $380,277; to Thomas Cusack, Jr., for $367,000; to Charles E. Cusack for $350,000; to Francis J. Cusack for $350,000; to Anna M. Cusack Johnson for $450,000, and to Jane Evelyn Cusack for $352,500; and to the father of the five Cusacks for $1,099,500; that about September 20, 1924, complainant and the five children and their father met at the Illinois Merchants Trust Company with Charles J. O'Mara and James M. Loughlin, who represented Thomas Cusack, Sr., and informed complainant that said Thomas Cusack, Sr., desired all of the checks representing the purchase price of the stock belonging to complainant and the five children indorsed over to an account which was to be opened in the name of Thomas Cusack, trustee, and at the same time informed complainant that his shares

would be accounted for at a later date, and then requested complainant to indorse and deliver to Thomas Cusack, Sr., his check for $380,277, and that believing that Thomas Cusack would account to complainant for the proceeds of the check, he indorsed and delivered the same to said agents of said Thomas Cusack, Sr.; that thereafter and on the 29th day of September, 1924, complainant met Thomas Cusack, Sr., who attempted to repudiate his agreement and understanding with complainant with reference to his trusteeship of the funds belonging to complainant, and then and there claimed the proceeds of complainant's check belonged to him, and that he intended to hold the same to his own use; subsequently said Thomas Cusack, Sr., gave to complainant the sum of $100,000, and after further negotiations said Thomas Cusack and complainant met in the office of said Thomas Cusack, Sr., and there were also present Joseph Connell and Willett Cornwell, attorneys for Thomas Cusack, Sr.; that certain documents were presented by the attorneys for Cusack, Sr., one of which was in the following words:

"In consideration of the sum of $380,277.00, paid by Thomas Cusack, Sr., to Harold Cusack, Harold Cusack hereby remises, releases and forever discharges said Thomas Cusack, Sr., individually and as Trustee, from any and all claims which he now has, ever had, or may at any time hereafter have, arising from or growing out of the shares of stock of the Thomas Cusack Company of New Jersey by Harold Cusack in which transaction said Thomas Cusack, Sr., acted as Agent for said Harold Cusack.

"Harold Cusack also hereby remises, releases and forever discharges said Thomas Cusack, Sr., individually and as Trustee from any and all claims of any nature whatsoever which said Harold Cusack now has or ever had, or may at any time hereafter have against

the said Thomas Cusack, Sr., for any cause or causes whatsoever.

.................... (SEAL)

"Dated at Chicago, Illinois this 23rd day of December, 1924."

and at the same time presented to complainant a check for $40,000 payable to his order, and five checks in the sum of $47,055.40 payable to the order of complainant, which checks aggregated $275,277, and that said Cusack, Sr., requested complainant to indorse five of said checks for $47,055.40 each, making the same payable to his, said Thomas Cusack's, five children; that complainant demurred, but after conferring with all the parties present and being assured that the amount due him would be paid by Thomas Cusack, trustee, he executed the release, indorsed the five checks for $47,055.40 each and handed the checks to Thomas Cusack, Sr.; that said five checks were deposited by Thomas Cusack, Sr., in the Illinois Merchants Trust Company in the account of Thomas Cusack, Sr., trustee, and at the same time Thomas Cusack, Sr., paid to complainant the amount of the income tax due to the federal government for the year 1924, amounting to $8,455.70; Thomas Cusack, Sr., died November 10, 1926; his will was admitted to probate on December 17, 1926, and Thomas Cusack, Jr., and Charles E. Cusack were appointed executors and are now acting as such executors; that in his will he made provision for four trusts amounting to $200,000 and the balance of his estate was divided share and share alike among his five children; that said will contained the following clause:

"Sixth: I direct that my adopted son, Harold Cusack, shall receive no part of my estate under this Will, as I have already made what I consider ample provision for him."

That said five children of Thomas Cusack, deceased, now faslely state to complainant that the execution and

indorsement of the five checks for $47,055.40 each and the delivery thereof constituted a valid legal gift by complainant to each of said five defendants, and they refuse to account for the same and refuse to make any accounting touching the amount due to complainant from said trust fund; that they all knew that the indorsement and delivery of said five checks were made and delivered without any consideration whatsoever, and that said checks were delivered to Thomas Cusack, Sr., at his special instance and request, and that the indorsement and delivery of said checks were brought about as a result of a conspiracy on the part of Thomas Cusack, Sr., and his aforesaid five children to cheat and defraud complainant.

Complainant prayed that an account be taken concerning all of the transactions and dealings between the parties to the bill and that the rights of the parties be ascertained and the defendants be decreed to pay complainant whatever shall appear to be due him on such accounting, complainant offering to repay defendants what, if anything, may be found due them from complainant; that the release hereinabove set forth be delivered up for cancellation; that the defendants Thomas Cusack, Jr., and Charles E. Cusack, individually and as executors of the will of Thomas Cusack, Sr., deceased, Francis J. Cusack, Anna M. Cusack Johnson, Jane Evelyn Cusack, and Illinois Merchants Trust Company, trustee under the Cusack will, or one or more of them, be decreed to pay complainant the full amount of the proceeds of the check for $380,277, received by complainant for the sale of his stock in the Thomas Cusack Company, and indorsed and delivered to Thomas Cusack, trustee, less any amount paid to complainant by said Thomas Cusack in his lifetime, and that the amount so found due to complainant from such an accounting may be decreed to be a first lien on the property and effects of said Thomas Cusack, de-

ceased, in the hands of the executors or trustee of his estate, and for other and further relief, etc.

The defendants, the five children of Thomas Cusack, Sr., deceased, at first interposed a general demurrer, which being overruled, they filed their answer in which they first alleged that "they do not admit any of the allegations in said bill of complaint contained, except as hereinafter specifically admitted, and require strict proof of each and every allegation in said bill of complaint not so specifically admitted." And the defendants then proceed categorically to deny all of the material averments of the bill. On April 28, 1927, complainant filed his replication to said answer.

The defendant, Illinois Merchants Trust Company, filed its answer (not abstracted) in which *inter alia* it admitted its corporate capacity and that it is informed that it had been named to act as trustee under the will of Thomas Cusack, Sr., deceased, but averred that it had not accepted said trusteeship and had not received any part of the property or estate of decedent under his will, nor has it intermeddled in any manner whatsoever as such trustee with the property or estate of decedent. It admits that there was maintained with it by Thomas Cusack a "checking account in the name of Thomas Cusack, Sr., Trustee," and that there was at one time, to wit, September 27, 1924, a certain check deposited to the credit thereof in the sum of $380,277, and that there was on, to wit, January 12, 1925, five certain checks each in the sum of $47,055.40 deposited to the credit of said account, but further says that it has no knowledge either from its records or otherwise whether any of said checks were made payable to the order of complainant or bore his indorsements, or were the checks mentioned in the bill as belonging to him; and further denies that there now is or was on December 29, 1926, the day of the service of the summons upon it in this cause, "any sum of money whatsoever on deposit to the credit of said checking account of

said Thomas Cusack, Trustee, or any sum of money whatsoever on deposit with this answering defendant under the control of Thomas Cusack, Jr. and Charles E. Cusack, as executors of the last will and testament of Thomas Cusack, deceased.''

On May 12, 1928, the day of the entry of the decree, the defendants by leave of court filed an amendment to their answer, the replication as filed standing to the answer as thus amended, in which they make further denials of some of the material averments of the bill.

The complainant, Harold Cusack, was a nephew of Thomas Cusack, Sr., and his adopted son. At ·the tender age of 4 years he became a member of Thomas Cusack's family and so remained for many years. In 1913 he entered into the employment of the Thomas Cusack Company, of which Thomas Cusack, Sr., was president, the largest stockholder and the controlling spirit in all its affairs. Harold Cusack started his work with the company as an apprentice. In 1915 he was six months in the manager's office. From there he went to the purchasing department for the succeeding year, then became operating superintendent of the Chicago branch of the company, and afterwards manager of the same, which position he retained until 1924 and was also vice president and a director of the company. It is in evidence that complainant received at times in excess of $40,000 a year in salary and bonus for his services. He was evidently a very useful servant of the company. The record does not disclose that any of the five children of Cusack, Sr., were ever in the employ of the company.

From the evidence it conclusively appears that complainant was at all times from his infancy until the sale of the stock of the Thomas Cusack Company and thereafter entirely dominated and controlled by Thomas Cusack, Sr.

It also appears that Cusack, Sr., was a dominant and a domineering character and would not brook opposi-

tion; that he was a man of great austerity of temper and disposition, and that when aroused by opposition, in any discussion, he gave exhibitions of his temper, which, to say the least, were unpleasant and disquieting to his opponents, and that many times complainant yielded to Cusack, Sr., to avoid arousing his temper and hostility, and particularly in the discussion of the matters in controversy between complainant and his foster father, concerning complainant's stock holdings, who at such times was in bad physical health; that Cusack, Sr., stood in the relationship of a parent to complainant since he was 4 years old and until his majority, and thereafter in the matter of complainant's stock holdings in the Cusack Company at and after their sale, as a self-imposed trustee, are facts which are not seriously in controversy.

The following facts found in the record are not in dispute and they constitute, in themselves, facts sufficient to control, as a matter of law, the rights of the parties to this litigation.

That at the time of the sale of all the stock of the Thomas Cusack Company, complainant, as shown by the books of the company, was the owner of 3,802.77 of its shares; that complainant and Cusack, Sr's., five children on the 19th day of September, 1924, gave a power of attorney for Cusack, Sr., to act as their attorney in fact in the sale of the stock which they owned in the Cusack Company. This reads as follows:

"We and each of us hereby authorize Thomas Cusack, Sr., to act for us in our behalf in connection with the sale of certain stock of the Thomas Cusack Company, now standing in our names and of which we are the owners, hereby ratifying and confirming all that he may do by virtue hereof."

In pursuance of the above-recited power of attorney, Cusack, Sr., sold to Blair & Company in New York City the stock of complainant and his five children for a sum aggregating $2,249,777. Six checks were made

and delivered to each of them for the amounts for which their respective shares of stock were sold. The checks were made payable to the order of George L. Johnson, who indorsed the same payable to each one of the six, complainant's check being for $380,277; all of these checks, including complainant's, were indorsed to the order of Thomas Cusack, Sr., trustee, at his request and all of them deposited in the Illinois Merchants Trust Company on September 27, 1924, to the account of "Thomas Cusack, Sr., Trustee" on his insistence. There were signature cards signed by complainant and the five children of Thomas Cusack, Sr., to the Illinois Merchants Trust Company with the notation "One signature only required" and also "voluntary mutual agreement between trustee and beneficiaries." On a new card dated June 26, 1925, it is written "one signature and one counter signature required."

The next financial bank transaction between Trustee Cusack and complainant and the trustee's five children was the following: Five checks dated December 23, 1924, drawn by Thomas Cusack, trustee, upon the Illinois Merchants Trust Company, payable to the order of Harold Cusack for the sum of $47,055.40 each. These checks were respectively indorsed payable to the order of each of the five children of Thomas Cusack, Sr., the trustee, and by each of the children, Charles E. Cusack, Thomas Cusack, Jr., Anna M. Cusack, Jane Evelyn Cusack and Francis J. Cusack, further indorsed over to Thomas Cusack, Sr., trustee, and then indorsed "Pay Illinois Merchants Trust Company, Chicago, Illinois, or order, Thomas Cusack, Trustee"; and these five checks were by Thomas Cusack, trustee, deposited to the credit of his trustee account in the Illinois Merchants Trust Company. None of these checks were retained or converted to their own use by either of the five children of said Thomas Cusack,

Sr., trustee, but went back into the trustee account in the Illinois Merchants Trust Company, on which they were drawn, so that when the five checks were deposited by Trustee Cusack into the trust account, the trust account was in the same condition as to the amount to its credit as it was before the five checks were drawn by him to the order of Harold Cusack. While there were other items deposited at the same time by Trustee Cusack in his trustee account, which together with the five checks above mentioned made a total deposit of $312,851.67, we are not concerned in this proceeding with any of the items except the five checks for $47,055.40 each, payable to the order of Harold Cusack, and by him indorsed and by the indorsees again indorsed payable to the order of Thomas Cusack, Sr., trustee, and by him deposited as above detailed to the trustee account.

The record shows beyond controversy that Cusack, Sr., without the consent or request of Harold Cusack, was the self-appointed trustee, and that he imposed himself upon Harold Cusack as such trustee by force of his personality and influence over him and without regard or reference to the rights of Harold Cusack in the premises. It cannot well be controverted that at the time the check for $380,277, the purchase price of complainant's stock holdings, was indorsed over to him by George L. Johnson, the payee, he had the right to retain the check making such disposition of it as he might wish, and that at that time no power could have deprived him of the check and the money it represented as the purchase price of his stock in the Cusack Company.

The witness, George J. Scherer, who was vice president of the Cusack Company, testified to his acquaintance with complainant and Thomas Cusack, Sr., about June, 1924; that Thomas Cusack, Sr., told him that Harold was the owner of $300,000 or more of stock;

that he stated that Harold was making money in the branch office of which he was manager, and that he earned it; that in January, 1925, in a conversation which the witness had with Thomas Cusack, Sr., he said *inter alia* that he had got his money and that he had given Harold $100,000; that he was not going to give him all his money because he (Harold) had the big head; that he was not going to let him take it and go into business, and if he lost it then he "ain't going to be broke," so that he would hold the balance of the money that he got until certain times when he knew Harold was going to take care of it; he said "you know Harold has the big head," and the witness replied, "Yes, I know it"; but also stated that Harold was a big earner in the company and was entitled to all he had got. He further testified that Thomas Cusack, Sr., tried to dominate the entire directorship of the company, and that, unless he could, he became furious.

The check for $380,277 was handed to complainant, as he testified, by J. N. Loughlin, the secretary of the Cusack Company, who asked him to indorse it to Thomas Cusack, trustee, and when asked "what is the idea," he replied "that's the way the boss wants it" (referring to Thomas Cusack, Sr.). Harold asked Loughlin why he could not deposit the check in his own name and Loughlin said that there was nothing to worry about, that the check was only going to be indorsed over to a trust account, and thereupon he indorsed the check as requested by Loughlin, and handed it back to him. While this is denied by some of the Cusack defendants, yet complainant is corroborated in a measure by the testimony of Loughlin, the secretary of the company, who testified that he took out the checks and asked to have them indorsed to a trust fund, that the children all gathered around the table (this occurred in the bank) and that he called the names of the defendant parties as the checks were

reached and turned over to them, and they were indorsed on the backs to the individuals, and he asked them to indorse them. When he reached a check with the name Thomas Cusack, he asked him to indorse the check and he did so.

"Q. Was that the way the entire operation went on? A. All but Harold, who asked me—said—he wanted to know what the idea was; that he didn't like it; so I told him that being a trustee fund the money would have to be accounted for and it was perfectly all right to indorse it."

On being asked whether complainant spoke in a loud tone or a soft one, he said "As I recall, very low, and up at my side at the head of the table; I was at the north end of the table."

According to this testimony the Cusack children and complainant were all together at the same table; and that complainant did protest at being asked to indorse the check to Cusack, Sr., cannot be gainsaid.

The only moneys paid from the trust fund by Cusack, trustee, to complainant were two sums, one of $40,000 on December 23, 1924, and the further sum of $105,000. On this date complainant executed the release to Cusack, trustee, set out in a statement of the pleadings. The only other items of money relate to payments of supposed gift tax and income tax, but as there was no gift, of course, there was no tax. Those are matters which in due course will have to be adjusted hereafter with the internal revenue authorities.

It is not contended that either of the five Cusack children ever discussed with complainant the making of a gift to either of them, or that the checks for $47,055.40 each were gifts from complainant to these children, nor does it appear that at any time with anybody was the matter of a gift discussed by complainant or either of the five children; as it appears, the checks were simply given as matters of form. They had no force

or effect except for a formal one, and that was abortive to pass the money evidenced by the checks to either of the children to whom complainant indorsed them as a gift, and there is no writing found in the record regarding the checks being gifts to the five children, to whom they were indorsed. It is held in *Richardson v. Richardson*, 148 Ill. 563, that in order that a gift *inter vivos* be valid, there must be an intention on the part of the giver and a delivery of the gift to or for the donee in pursuance of such intention, and also an acceptance. An intention on the part of the donor that the gift shall go into immediate and absolute effect is essential. The mere fact of a delivery and acceptance or permission to take, followed by possession, is not, of course, sufficient to establish a gift, as this may be equally consistent with a loan or sale. *Rothwell v. Taylor*, 303 Ill. 226; *Bolton v. Bolton*, 306 Ill. 473; *Merchants' Loan & Trust Co. v. Egan*, 222 Ill. 494. In *Telford v. Patton*, 144 Ill. 611, the doctrine controlling gifts *inter vivos* is stated thus:

"It is essential to a donation *inter vivos*, that the gift be absolute and irrevocable, that the giver part with all present and future dominion over the property given, that the gift go into effect at once and not at some future time, that there be a delivery of the thing given to the donee, that there be 'such a change of possession as to put it out of the power of the giver to repossess himself of the thing given.' (1 Parsons on Cont. marg. page 234; *Dole v. Lincoln*, 31 Me. 422; *Robinson v. Ring*, 72 Me. 140; *Northrop v. Hale*, 73 Me. 66; *Grover v. Grover*, 24 Pick. 261.) The delivery must be made with the intent to vest the title in the donee. (*Jackson v. Twenty-third St. Ry. Co.*, 88 N. Y. 520.)"

None of the elements showing an intention to make a gift, or an acceptance of any such gift, is present in

this case. Therefore we hold that the evidence utterly fails to establish a gift from complainant to the five Cusack children of $47,055.40 each, or of any other sum.

The opinion of the learned chancellor is embodied in the certificate of evidence and while legally it has no function to perform as a part of such certificate, yet counsel for the contending parties are not questioning the verities of that opinion. We will, therefore, adopt some of his findings regarding the question of a gift as they meet our approval, as conforming to our own opinion. The chancellor held, as we do, that:

"From the evidence of the defendants it does not appear clearly for what purpose they received the checks, whether as a gift or otherwise. There is no evidence in the record that they, as individuals, claim the money as being their property. There is, therefore, the only question whether they, as individual defendants, accepted the money as gifts. If the Court accepts the testimony of the defendants, there is a denial of the testimony of the complainant, that the money was turned over to them as testified to by him.

"It is unusual that there was no conversation with Harold Cusack by any of the defendants who received this money from this complainant about the reason for turning over this fund to the individual defendants.

"It is a fact that Harold Cusack, while not a brother of the defendants, but a nephew of Thomas Cusack, Sr., was a member of the family for a great number of years, and it must be admitted that there were many conversations with the complainant on other subjects; yet according to the evidence of these defendants nothing was said about this fund.

"The burden of proof is upon the defendants to show that the complainant made a gift without any qualification, and that the gifts were accepted. Exhibit 11, being one of the agreements for the payment of the

income tax, signed by each of the individual defendants, is as follows:

" 'In consideration of the sum of $47,055.40 this day given to Francis J. Cusack, by Harold Cusack, said Francis J. Cusack agrees to repay to Harold Cusack, the amount of the United States income tax for the year 1924, arising from or growing out of the sale by Harold Cusack of 471 shares of stock of the Thomas Cusack Company of New Jersey, which tax the said Harold Cusack will have to pay to the United States Government in the first instance as a part of his income tax for the year, 1924.

FRANCIS J. CUSACK

" 'Dated at Chicago, Illinois, this 23rd day of December, 1924.'

"This agreement, together with an agreement with each of the other individual defendants, is in evidence, and is strongly stressed upon as proof of a gift to each of the defendants.

"The complainant's evidence tends to show that the papers were not prepared by him, but were given to him at the time of the execution of the release and the indorsement of the several checks for $47,055.40 each. He stated that he asked some of the defendants, so long as they had the money, to pay the income tax. He is, to some extent corroborated by Jane Evelyn Cusack. The money for the income tax which was paid by the complainant, was repaid to him from the account of Thomas Cusack, Trustee, on September 24, 1925, by checks for $3,674.78 and December 17, 1925, for $4,971.06. These checks were indorsed by complainant and deposited in his bank.

"There is also in the record the evidence of Paul Sparks, a witness for the defendants, to the effect that he talked with the complainant about the income tax return, and that the complainant stated, in substance, that he held the stock in his name that belonged to

the other boys and girls; which conversation the complainant denied. The evidence of this witness is inconsistent with the record, for each of the defendants never claimed that the complainant had stock which was their property, and that the money received, therefore, by the complainant belonged to them."

In all material respects the chancellor's findings were in favor of the complainant with the exception that the acceptance of the gift and income tax checks created, as he held, an estoppel and these are the words of his opinion on this subject:

"It is not controverted that the complainant received as a refund for income tax paid by him from Thomas Cusack, Trustee, the amount evidenced by checks, one being dated September 24, 1925, for $3,674.78 and the other dated December 17, 1925, for $4,971.06. It will be noted that one of said checks was nine months and the other almost twelve months, after the five checks for $47,055.40 were indorsed by complainant. No contention is made that the amounts so received by complainant are not correct.

"If the fund is the property of the complainant, as contended for by him, why did he accept the income tax refund checks? He would be liable for the income tax as owner, but his receipt of this money is inconsistent with his claim to ownership; and especially when the court considers the dates of the checks and the retention of this money paid, according to the agreements with the individual defendants, in consideration of the receipt by each of them of $47,055.40 from complainant.

"The complainant is a man of intelligence and has had a wide business experience, and he surely had ample time to reflect. The acceptance of this amount creates an estoppel to urge, at this time, his claim of ownership, and in the opinion of the court, is a ratification by the complainant of his acts at the meeting that was held in the office of Thomas Cusack, Sr., on the 23rd day of December, 1924."

For these reasons the chancellor dismissed the bill for want of equity.

The will of Thomas Cusack, Sr., was offered and received in evidence, the sixth clause of which is as follows:

"I direct that my adopted son, Harold Cusack, shall receive no part of my estate under this Will, as I have already made what I consider ample provision for him."

This provision may be designated as a testamentary falsehood, for so far as having made ample, or any, provision for complainant, he had despoiled him of within less than $15,000 of a quarter of a million dollars. Furthermore the release recites as a consideration moving from Cusack, Sr., to complainant the sum of $380,277, paid by Thomas Cusack, Sr., to complainant, whereas in truth and in fact, as undisputably appears from the record, he received but $145,000 from Cusack as trustee, or in any other capacity. It is quite apparent from the testimony in the record that complainant was subservient to the whims and conduct of his foster father and had been for many years, and that when he exacted the release from complainant, which he had no right to do as trustee, he took an undue advantage of his position. He arbitrarily exacted from complainant five checks, one for each of his children of $47,055.40 each. As trustee it was Thomas Cusack's duty to account to complainant for every dollar of the trust fund, and it was not only inequitable, but unconscionable, for him to exact a release of all claims and demands without so doing. That was his duty, for the nonperformance of which the law will not excuse him, and upon his death the burden of making such an accounting rested upon the executors of his will and his children who received any part of the trust property. *Maher v. Aldrich*, 205 Ill. 242.

It was held in *Breit v. Yeaton*, 101 Ill. 242, that the doctrine is well settled that a *cestui que trust* may

pursue the proceeds of trust property, and charge it with the original trust any property in which they may be invested, as against all who have actual or presumptive notice of the trust.

Complainant did not seek to put his property, the proceeds of the sale of his stock in the Cusack Company, in trust with his foster father, or anyone else. By no word, act or deed of his did he constitute his foster father his trustee for such funds. He was in a measure forced to acquiesce in the conduct of his foster father in assuming the office of trustee for his property, and when the release was exacted from him by his foster father, trustee, he was in a measure constrained by the actions of the Cusack defendants and their father to do so. There was no act or ratification by complainant by indorsing the five checks for $47,055.40 each, payable to the Cusack children, or by paying the federal taxes herein above referred to, for while, as a matter of form, these five checks were drawn against the trustee account of Thomas Cusack, Sr., of which the funds of complainant were a part, it is a doctrine of equity that it will go through forms to the substance, and when you arrive at the substance of this transaction, there was nothing taken from the trustee funds by the drawing of these five checks of any amount whatever, because these were mere surface transactions, for all the checks were immediately deposited back in the bank into the trust estate of Thomas Cusack, Sr., trustee. The method used was but a subterfuge and had no real substance as a transaction between the parties,—the trustee lost no money and complainant did not gain any, neither did any of the five children by that particular performance. When the checks were redeposited in the trust account that account remained the same as it did before the checks were originally drawn. There is no pretense in this record that Thomas Cusack, Sr., as trustee, ever accounted to complainant, the *cestui que trust,* and hav-

ing assumed the office of trustee equity will demand that he account for the trust property to the beneficiary.

In *Fox v. Fox*, 250 Ill. 384, it was held that no particular form of words is necessary to create a trust, when the writing makes clear the existence of a trust. If the writing makes clear the existence of a trust, the terms may be supplied *aliunde*.

The actions of Thomas Cusack, Sr., in his creating the trust with complainant by depositing his funds in the Illinois Merchants Trust Company, as the funds of Cusack as trustee, and all of his dealings with said funds, clearly stamp not only the funds themselves as trust funds, but Thomas Cusack as the trustee thereof. The learned chancellor did decide the point as to the duty of Cusack, Sr., as trustee, to account to complainant as the beneficiary of the fund, which he held in trust belonging to and the property of complainant, but gave little heed to it in its application to the rights of complainant. We think the doctrine applicable here is well stated in 39 Cyc. 526, in these words:

"As a general rule a trust may be enforced against the trustee, his assignees or personal representatives, heirs or devisee, and all persons who acquire the trust funds or property or interests therein, with notice of the trust equities, or without consideration; and as against all persons who participate with the trustee in misappropriating the trust fund or property, or who claim a benefit from the trustee's acts; and this liability may be enforced against the trustee and such other parties jointly or severally."

It is a peculiarly noticeable fact that complainant made no request for any check that his foster father wrote out in his name, and that there were no words between them, as complainant yielded to the assumed authority of his foster father and did what he told him to do. This was the control and power Thomas Cusack,

Sr., exercised over his *cestui que* trust, complainant herein, and it is patent that complainant was powerless to assert his rights as against his trustee, and that he was in a measure coerced to yield to the unlawful demands of his trustee.

As there was no gift the doctrine of estoppel has no application as between the Cusacks and complainant, and as there was in fact no consideration moving from Cusack, trustee, to complainant for the execution of the release, complainant is not estopped from demanding an accounting from the executors of the trustee and the children who were the recipients of the fund, which in equity belongs to complainant.

The delay in the assertion by complainant of his rights by filing his bill against defendants has in no wise prejudiced them for the situation did not change from the time the release of complainant was exacted from him by Cusack, trustee, to the time when the bill was filed. No defense open to the defendants at the time of the giving of the release has been lost between the time of the giving of the release and the filing of the bill herein. Nothing in the meantime had intervened to prejudice the rights of either complainant or the defendants. Complainant has the same right to assert his claim and the defendants to defend against that claim, as they would have had if the bill had been filed immediately after the delivery of the release by complainant to his self-constituted trustee, his foster father, Thomas Cusack, Sr.

The doctrine of estoppel if applicable to the instant case may be found in *Holcomb v. Boynton*, 151 Ill. 294. In *Vail v. Northwestern Mut. Life Ins. Co.*, 192 Ill. 567, the court said: "When an estoppel is claimed by reason of silence or fraud, it must be silence when there is a duty to speak, or it must be a case of false representation 'with a fraudulent purpose and a fraudulent result.'" *Gallagher v. Northrup*, 215 Ill. 563; *Sutter v.*

*People's Gas Light & Coke Co.,* 284 Ill. 634, in which the doctrine of *Holcomb v. Boynton, supra,* is reiterated. Furthermore, defendants predicated their defense upon the theory that the five checks for $47,055.40 each were gifts from complainant, which they failed utterly to sustain. An estoppel in no form is found in defendants' pleadings.

We hold for the reasons hereinabove recited that the chancellor erred in dismissing complainant's bill for want of equity, and in not granting complainant the relief prayed in his bill, and to which he is entitled under the proofs in the record, and therefore the decree of the superior court is reversed and the cause is remanded to the superior court with directions to enter a decree in favor of complainant and against the defendants Thomas Cusack, Jr., and Charles E. Cusack, individually and as executors of the last will and testament of Thomas Cusack, Sr., deceased, Francis J. Cusack, Anna M. Cusack Johnson, and Jane Evelyn Cusack for the sum of $235,777, with interest thereon at 5 per cent per annum from December 27, 1926, the date of the filing of the bill herein, to the entry of such decree; that as to the defendant executors, the amount of such decree shall be paid in due course of administration of the estate of Thomas Cusack, Sr., deceased, and as the amount of said decree arises from trust funds in the hands of Thomas Cusack, Sr., at the time of his death, it may be paid in the same way as if the claim had been proven against the estate of Thomas Cusack, Sr., deceased, in the administration of his estate in the probate court of Cook county as a claim of the fifth class. The amount received by Thomas Cusack, Sr., of complainant's money, the proceeds of the sale of his stock in the Cusack Company to Blair & Company of New York City, was $380,277. All he paid was $145,000 in two payments, one of $40,000 and the other of $105,000, and as Cusack, Sr., was a faith-

less trustee and his children were his co-conspirators and the beneficiaries of their father's unfaithfulness to the extent of $235,777, neither the estate of Thomas Cusack, Sr., nor his children, under well-settled rules of law, are entitled to any compensation for their maladministration of complainant's trust estate.

*Reversed and remanded with directions.*

WILSON and RYNER, JJ., concur.