## SMITH v. DRAVO CORP.
### No. 10937.

United States Court of Appeals
Seventh Circuit.
Dec. 1, 1953.
Rehearing Denied Dec. 24, 1953.

Wilfred S. Stone and Becher W. Hungerford, Chicago, Ill., for appellant.

Charles B. Spangenberg, Chicago, Ill., William H. Parmelee and John S. Mason, Pittsburgh, Pa., Christy, Parmelee & Strickland and William G. Young, Pittsburgh, Pa., of counsel, for appellee.

Before DUFFY, LINDLEY and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

In Smith v. Dravo Corporation, 7 Cir., 203 F.2d 369, we affirmed the District Court's judgment on Counts 2, 3 and 4 of plaintiff's complaint but reversed as to Count 1, with respect to which we found that plaintiffs, possessed of certain trade secrets relating to the construction of freight containers for use on railroad cars and ships, communicated them to defendants in confidence and that defendant wrongfully used the information thus disclosed to the injury of plaintiffs. We remanded the cause with directions to proceed in accord with the opinion, directing that defendant be enjoined from

making further use of the information received from plaintiffs in confidence and from further production and sale of shipping containers incorporating plaintiffs' design, that plaintiffs recover the loss suffered with respect to their capital investment and the profit realized by defendant as a result of its wrongful use of plaintiffs' design and that the court hear evidence upon an accounting for the misuse of plaintiffs' design and make findings and enter a decree in accord therewith.

Upon remand the District Court entered the decree from which plaintiffs now appeal, in which it held that certain features of plaintiffs' design which had been made available in published material were not included in our direction to enjoin all devices of defendant employing plaintiffs' design. Defendant urged and the court apparently thought that, in view of the fact that certain elements of construction were present in devices that had been sold and were, therefore, available to defendant, plaintiffs' protection of their secrets as to those features had been removed by such publication. In this connection it should be observed that, in discussing the existence of plaintiffs' trade secrets, though we pointed out that certain factors in plaintiffs' design were apparent from the manufactured article sold, we held that it mattered not at all, under controlling Pennsylvania law, that certain information had thus been made available to the defendant, for, in view of the fact that it received from plaintiffs in confidence all the drawings, blueprints and other details of construction, followed the same and did not avail itself of any information it might have been able to obtain by observation of the manufactured devices, it was bound to refrain from using all elements of plaintiffs' design. In other words, we held that the mere fact that the means by which a discovery is made are obvious can not help the competitor who by unfair means or as the beneficiary of a broken faith, obtains the desired knowledge without himself paying the price in labor, money or machines ex-pended by the discoverer. We observed further that we had previously held that whether it would have been possible for the wrongdoer to have discovered the details of construction without the information disclosed to him in confidence, it was not necessary to determine, because the wrongdoer had, by breach of confidence, obtained the information and had not availed itself of any public information. Consequently it was our decision that defendant should account as to all devices manufactured by it which embraced in any way the features of plaintiffs' design.

■ In this connection it is clear from the drawings of both plaintiffs and defendant contained in the record then before us that defendant's devices ABCD, E and F–G incorporated and utilized the property rights of plaintiffs. This is made obvious by the various exhibits and from the digest thereof supplied by plaintiffs' counsel, the accuracy of which is shown of record. Consequently the injunction awarded should have restrained manufacture and sale of each of the exhibits named and directed an accounting as to the profits made by defendant as to each.

In addition it was the plain purport of our decision that any other devices found to include any of the details of construction of plaintiffs' container manufactured by defendant should likewise be enjoined and included in the accounting. As to that subject matter, the record is of course silent, and it follows that it becomes the duty of the District Court to hear evidence as to whether any such other devices manufactured or sold by defendant include any of the elements of plaintiffs' design.

■ In our opinion we said that the court should determine plaintiffs' monetary loss and that this included, first of all, their loss of investment. During the course of the trial, when plaintiffs started to prove their capital investment loss, in view of the detailed character of the proof, the parties entered into a stipulation in which they agreed that certain exhibits setting forth this loss aggregating

$106,329.31 constituted a correct totalization of plaintiffs' capital expenditures and receipts; that the stated balance was correct; that the net loss was made up of the following items and the percentages indicated: Container ship 5%, Two test containers 5%, Knockdown containers 50%, Rigid containers 15%, Legal fees 5% and Sales expense 20%. The stipulation provided further that if the court should ultimately determine that plaintiffs were found to be entitled to recover only for certain of the items, the court should apportion the allowance on the basis of the foregoing percentages. In view of the fact that the record is devoid of evidence that defendant at any time entered upon the construction of container ships, we conclude that that part of plaintiffs' investment in its plans for such construction should not be included. Consequently we eliminate from the recovery, the investment in the container ship structure, that is, 5% of the capital investment loss. It is clear from our opinion, we think, and entirely justified by the record, that all the other items of expense were legitimate in character and, in view of the stipulation of the parties, that the capital loss investment is fixed by the evidence heretofore received at $106,329.31 less 5% thereof, leaving a net of $101,012.85. Consequently no further evidence need be taken on the capital loss investment.

██ We direct further that interest be allowed upon the same at 5% per annum as provided by the Illinois statutes, from the date upon which the loss was sustained, which is November 1, 1947. Chap. 74, Smith-Hurd Ill.Ann.St. § 1 et seq.; Michelsen v. Penney, 2 Cir., 135 F.2d 409. It is not necessary to decide whether this allowance is within the strict terms of the statute. This is a suit in equity to recover damages arising from a breach of confidence. In such a situation the courts of Illinois uniformly follow the rule that where a fiduciary or confidential relationship exists and is violated, interest upon the recovery may be allowed irrespective of statute. Thus the Illinois Supreme Court said, in Duncan v. Dazey, 318 Ill. 500 at page 527, 149 N.E. 495, at page 506: "Moreover, this is an equity proceeding, and equity will allow interest in a proper case, although not within the precise terms of the statute. Thompson v. Davis, 297 Ill. 11, 130 N.E. 455; Golden v. Cervenka, 278 Ill. 409, 116 N.E. 273; Keady v. White, 168 Ill. 76, 48 N.E. 314. The rule followed in equity is to allow interest where warranted by equitable considerations. If it does not comport with justice, interest may be disallowed. McKey v. McCoid, 298 Ill. 566, 132 N.E. 233. Both upon equitable principles and by the statute, the allowance of interest was proper." See also Golden v. Cervenka, 278 Ill. 409 at page 433, 116 N.E. 273, at page 283; McKey v. McCoid, 298 Ill. 566 at page 572, 132 N.E. 233, at page 235; Thompson v. Davis, 297 Ill. 11 at page 21; Walker v. Montgomery, 249 Ill. 378, 94 N.E. 527, and Cohen v. North Ave. State Bank, 291 Ill.App. 558 at page 570, 10 N.E.2d 823, at page 828. In view of these authorities, we conclude that, under the circumstances of this case, plaintiffs are clearly entitled to interest on the amount of their capital investment.

██ The findings and conclusions made in our original decision and amplified by this one are amply justified without remand for additional findings as to those items. Under Title 28 U.S.C. § 2106 the appellate court may "affirm, modify, vacate, set aside or reverse any judgment, decree, or order * * * and may remand the cause and direct the entry of such appropriate judgment, decree, or order" as may be "just under the circumstances." Ordinarily, as to issues upon which no findings have been made, the court will reverse with directions to make findings and conclusions, but in equity, where the record is complete or the evidence uncontradicted or entirely documentary, the appellate court is bound to decide the case, so far as it is in condition to be decided, and direct such a decree as under all circumstances may be proper. Ridings v. Johnson, 128 U.S. 212,

9 S.Ct. 72, 32 L.Ed. 401; U. S. v. Rio Grande Dam & Irrigation Co., 184 U.S. 416, 22 S.Ct. 428, 46 L.Ed. 619; Weeks v. Pratt, 5 Cir., 43 F.2d 53, certiorari denied 282 U.S. 892, 51 S.Ct. 106, 75 L.Ed. 786; Potter v. Beal, 1 Cir., 50 F. 860. In Shore v. United States, 7 Cir., 282 F. 857 this court said at 860: "There is no question but that this court, on an appeal from a decree in an equity suit, may consider the evidence, and make findings of fact which are determinative of the controversy." In McComb v. Utica Knitting Co., 2 Cir., 164 F.2d 670, at page 674, the court, after observing that the trial judge did not discuss a certain question or make any finding on it, citing a number of cases, said: "As that evidence is entirely documentary, no issue of witness' credibility arises; therefore, we can pass on the facts as well as could the trial judge, and need not remand for a finding by him." In Weeks v. Pratt, 1 Cir., 43 F.2d 53, 56, the court concluded "This is an appeal in equity. The whole case is before us, and we may render such decree as may be just and proper in the premises. Ridings v. Johnson, 128 U.S. 212, 9 S.Ct. 72, 32 L.Ed. 401."

In view of these authorities and of the nature of the proof and its complete character, we have entered our conclusions as to plaintiffs' devices ABCD, E and F–G, as to the capital loss investment and as to interest, thus eliminating the necessity of any further hearing as to them. The issue as to what devices other than those enumerated, if any, have been made by defendant in violation of its fiduciary duty, embracing any of the elements of plaintiffs' design, the District Court will have to determine.

In order to eliminate further controversy, we have prepared a decree which we think is in accord with our original opinion and this decision. It adopts to a certain extent the terms of the one entered by the District Court and modifies it in certain other respects. The judgment entered is vacated and the cause is remanded with directions to the District Court to enter the decree hereto attached and made a part hereof.

EXHIBIT A.

---

IN THE UNITED STATES DISTRICT COURT For the Northern District of Illinois Eastern Division

ALVA SMITH, PATRICIA SMITH TILDEN, SUZANNE SMITH STERN and THE LEATHEM D. SMITH SHIPBUILDING COMPANY,

*Plaintiffs,*

*vs.*

DRAVO CORPORATION,

*Defendant.*

Judgment and Decree.

This cause coming on to be heard on the mandate of the United States Court of Appeals,

It Is Hereby Ordered, Adjudged and Decreed, that:

1. The Second, Third and Fourth Counts of the complaint are hereby dismissed with prejudice.

That, with respect to Count **I**:

2. The defendant has violated its relationship of confidence and trust with plaintiffs in respect to the Safeway Container Development.

3. A writ of injunction issue, permanently enjoining the defendant, its subsidiaries, officers, employees and representatives, and all persons in active concert or participation with them and with each of them:

A. From advertising, offering to sell, selling or delivering Dravo shipping containers known in the record as Types ABCD, E and F–G.

B. From "further production and sale of shipping containers incorporating plaintiffs' design", including any containers which possess any one of the following features:

(1) A rectangular, parallelopiped shipping container deriving support from a heavy frame at its edges with open-sided sockets and vertically aligned supports depending from said frame.

(2) Open-sided sockets recessed into the top of a shipping container.

(3) A lifting eyelet in a socket.

(4) Legs at the corners which fold parallel to the length of the container.

(5) Reinforcing straps across the bottom of the containers for distributing the load to the tines of a fork tractor.

(6) Side panels having corrugations and unreinforced by an inside plate.

(7) Vertical rounded corrugations in side panels having a diameter approximately one-quarter their spacing.

(8) A heavy plate welded to the bottom of a pillar and a leg mounted on said plate.

(9) A door sash in one end of an oblong shipping container with its upper portion positioned between open-sided sockets.

(10) Corner pillars welded at their bottoms to a heavy flat base plate.

(11) Corner pillars having their lower inside surfaces welded to the sides of a double walled bottom.

(12) Corner pillars having vertical flanges having a surface parallel to the plane of the adjacent surface of the pillar.

(13) Corner pillars having vertical flanges spaced from the outer surfaces of the pillars by a distance slightly greater than the depth of panel corrugations.

(14) Bottom of side panels engage floor top while corner pillars extend to floor bottom.

C. From "further use of the information received from the plaintiffs in confidence", including lists of customers, and "from enjoying benefits flowing from the breach of confidential relationship."

4. Judgment is hereby entered against defendant for the sum of $101,012.85 plus interest at 5 per cent per annum from November 1, 1947 to the date of this decree, representing plaintiffs' capital investment loss, together with costs allowed by the mandate of the Court of Appeals.

5. The court will hereafter:

A. Hear the evidence relating to the misuse of plaintiffs' customers' lists and enter findings in accord therewith, and thereafter enter a supplemental decree providing that the defendant be enjoined from selling any kind of a shipping container to those customers improperly contacted by defendant.

B. Ascertain whether any containers other than Types ABCD, E and F–G coming within the scope of Paragraph 3 of this decree, have been made by defendant prior to this decree and enter a supplemental decree in accord therewith.

6. At the conclusion of the hearings provided in Paragraph 5 above, the court will determine, or refer the cause to a master to determine, the following:

A. The profits made by defendant on the sale of each of its three types of containers, the ABCD, the E and the F–G and any other containers other than those mentioned coming within the scope of Paragraphs 3B and 5B of this decree. In determining defendant's costs, the finding will be specific at least as to the following: (1) the date of each order; (2) the number of containers in each order; (3) the type of containers on each order; (4) the cost of materials for each of the three general types; (5) the cost of labor; (6) newspaper, maga-

zine and radio advertising; (7) printing including circulars and specification sheets; (8) mailing expense; (9) billing and accounting; (10) selling expenses; (11) every item of overhead allowed as a deduction and any and all items bearing upon defendant's profits in this connection.

B. Defendant's profits on additional containers if any found to come within Paragraph 5B above.

7. At the final hearing, the following matters shall be disposed of by supplemental decree: judgment for defendant's profits and all costs in this court and before the master.