116 Ill. App.3d 959 (1983)
452 N.E.2d 684
ANTHONY LABARBERA, JR., Plaintiff-Appellant,
v.
ROSE LABARBERA, Defendant-Appellee.
No. 82-1093.
Illinois Appellate Court  First District (2nd Division).
Opinion filed July 26, 1983.
Rehearing denied August 30, 1983.
*960 *961 J. Robert Geiman, Ellen J. Kerschner, and Daina B. Van Dervort, all of Peterson, Ross, Schloerb & Seidel, of Chicago, for appellant.
Sydney R. Marovitz, of Marovitz, Powell, Pizer & Edelstein, and John L. Leonard, of Bergstrom, Davis & Teeple, both of Chicago, for appellee.
Affirmed in part, and reversed and remanded in part.
PRESIDING JUSTICE DOWNING delivered the opinion of the court:
Plaintiff, Anthony LaBarbera, Jr., brought this action against his brother Joseph's widow, defendant, Rose LaBarbera, seeking a declaration of a constructive trust over funds which belonged to their parents and were allegedly misappropriated by Joseph.[1] Plaintiff appeals the circuit court of Cook County's refusal to declare either an express or constructive trust, or to allow prejudgment interest on the monies allegedly due.
Plaintiff's amended complaint averred the following: after the death of their father in 1968, Joseph, who was a licensed real estate broker, took it upon himself to manage the affairs of their mother, who died in 1978 at the age of 90 or over. On April 3, 1971, Joseph executed a document captioned "DECLARATION," which stated that he had received from the estate of his deceased father and from his living mother the following sums:
1. The sum of $21,200 on property located on West North Avenue in Chicago, Illinois, secured by a note and mortgage;
2. Proceeds in the amount of $17,000 from the sale of property on Halsted Street in Chicago; and
3. The sum of $2,000 which he drew from his parent's bank account.
The next paragraph in the declaration read:
"JOSEPH LABARBERA further states that he waives, relinquishes and surrenders any rights to the balance of the properties *962 held by his mother and his brother, ANTHONY LABARBERA, and in the event of the death of his mother, the total sums remaining in the joint names of various parties is to be released to NANTHONY [sic] LABARBERA. That any differences between the sums he has received and the sums that ANTHONY LABARBERA should receive will be settled between them and Joseph LaBarbera will pay to Anthony LaBarbera the differences within a reasonable time. * * *"
The document was signed by Joseph and was notarized.
The complaint further alleged that, as said funds were never accounted for, an accounting was due. Plaintiff also alleged that Joseph sold properties belonging to their parents and used the proceeds to buy real estate registered in his and defendant's names as joint tenants, or in the alternative, registered pursuant to a declaration of trust which passed the interest solely to defendant after the death of Joseph in 1975. Plaintiff additionally averred that Joseph secured cash from certain bank accounts owned by their mother, including a certain sum from the Bank of Lincolnwood. All of the transactions mentioned were allegedly secret and for the sole benefit of Joseph and defendant, and to plaintiff's detriment. Allegedly Joseph was in a fiduciary relationship with plaintiff, or in the alternative, acted fraudulently with respect to the transactions. Plaintiff claimed that he had previously demanded an accounting from defendant for one-half of the subject funds and that defendant refused to account for them.
Plaintiff prayed that an accounting be had of the funds secured by Joseph in derogation of the declaration of April 3, 1971; that the court impress a constructive trust on the real estate; that the court restrain defendant from transferring or disposing of the subject property and funds; and that the court grant other relief, including prejudgment interest.
During the bench trial, plaintiff testified that his parents trusted his brother Joseph and that in regards to his father's affairs, Joseph "took care of everything." Plaintiff worked long hours as a truck driver and "never had much to do with" his parents. He stated that he and Joseph argued after their father died and that he wanted something on paper so that "my mother and myself would be secured * * * in case of [Joseph] dying, that she wouldn't be left out with all this money that he had in his possession." The brothers, at Joseph's suggestion, went to Joseph's lawyer, Jiro Yamaguchi, and requested that he "write up something that would protect my mother, a declaration of trust." The "DECLARATION" was drafted and executed on April 3, 1971.
*963 As to the North Avenue property listed on the declaration, plaintiff testified that in the early 1960's, before their father died, Joseph informed plaintiff that the bank was going to foreclose on his property. Joseph asked plaintiff to accompany him to their father's house, which plaintiff did, to request a loan of $21,200. Joseph thereupon received the money.
In regards to the Halsted Street property listed on the declaration, plaintiff testified that the property, title to which passed to the mother on the death of the father, was sold to the city of Chicago for $17,000. Joseph used the proceeds to purchase property located on Congress Street. This property was eventually sold to Cleo Howard, with Joseph retaining the proceeds.
The sum of $2,000, listed as item No. 3 on the declaration, was withdrawn by Joseph on March 7, 1970, from a bank account at the Bank of Lincolnwood which had plaintiff, Joseph and their mother listed as joint tenants. After Joseph withdrew the $2,000, he gave possession of the passbook to plaintiff, who would periodically bring the book into the bank to have interest posted. Without the passbook and without plaintiff's knowledge, Joseph closed the account which had a balance of $9,177.54 as of April 26, 1971. Plaintiff also testified that in 1973, after signing the 1971 declaration, Joseph sold, for the sum of $5,000, a piece of property on Burling Street which had belonged to their father, and retained the proceeds.
Defendant was called by plaintiff as an adverse witness. Claiming lack of knowledge, she could not testify as to most of her husband's dealings. Jiro Yamaguchi, Joseph's lawyer, testified as to the circumstances surrounding the execution of the April 3, 1971 declaration. He stated that he used the term "declaration" because he "did not have the means of drawing out a full trust." His secretary was not present and he typed the document himself. In explaining the document, Yamaguchi further stated that, "I have 2 brothers who were having an argument who were amiably settling something between them in terms of a future inheritance from their parents. * * * Whether it created a trust or whether it was  would create an obligation, I wanted something on paper which both the brothers could live with."
At the close of plaintiff's case, the court refused to grant plaintiff's motion for a directed verdict. The court characterized the declaration as a settlement between the prospective heirs as to the proceeds of the estates of their parents, and found that the testimony and facts of the case did not warrant the imposition of a constructive trust. Defendant's case consisted of her sole testimony during which she denied knowledge of the declaration and said she did not receive *964 any of the money which her husband Joseph withdrew from the Bank of Lincolnwood account.
The record established that Joseph died in 1975; that at the time of the trial, the North Avenue property was owned by Rose and used for rental income; that Rose resided in a residence at 6237 North Caldwell in the city of Chicago; and that in either 1979-1980, Rose sold property located at 5200 West La Moyne in the city of Chicago.
At the conclusion of trial, the court found that there was a breach of the April 3 declaration in that there was no proper accounting to Anthony and that he would "deny the relief requested to construe a trust." In the final judgment order, the trial court denied all relief sought by the complaint; found that the plaintiff was not entitled to an accounting or to the impression of a constructive trust on the property listed on the "DECLARATION"; but, entered judgment in the amount of one-half of the sum of $9,177.54, the amount in the Bank of Lincolnwood account. The court refused to award prejudgment interest on the amount, as requested by plaintiff, because it found "no willfulness, wantonness or knowledge on the part of the defendant." Plaintiff appeals from all portions of the trial court's judgment except the monetary award in his favor.

I

A
 1 The threshold issue to be addressed in this appeal is whether the trial court erred in refusing to impose a constructive trust over funds misappropriated by Joseph which he had obtained by virtue of the family relationship.[2] A constructive trust will be used to compel a party who unfairly holds a property interest to convey that interest to the one to whom it justly belongs. Gravitt v. Jennings (1979), 79 Ill. App.3d 286, 288, 398 N.E.2d 395.
 2, 3 Constructive trusts are generally divided into two classes: one, those arising where actual fraud is involved, and the other, those arising by virtue of the existence of a fiduciary or confidential relationship. As said in Kester v. Crilly (1950), 405 Ill. 425, 432, 91 N.E.2d 419, a confidential relationship "may be moral, social, domestic, or even personal. [Citations.] Where the relationship does not exist *965 as a matter of law, it must, however, be proved by clear and convincing evidence in order to establish a basis for raising a constructive trust." See also Lux v. Lelija (1958), 14 Ill.2d 540, 546, 152 N.E.2d 853; In re Estate of Ray (1972), 7 Ill. App.3d 433, 439, 287 N.E.2d 144.
 4 Factors to be considered in determining whether such a confidential relationship exists are: the degree of kinship of the parties, the disparity in age, health, mental condition, education and business experience between them and the degree of trust placed in the dominant party. (Kester v. Crilly (1950), 405 Ill. 425, 432, 91 N.E.2d 419; Desiderato v. Sullivan (1980), 84 Ill. App.3d 1117, 1121, 406 N.E.2d 116, appeal denied (1980), 81 Ill.2d 590.) In this case, the family relationship was close  that is, between parent and child and between two siblings  Joseph was a real estate broker while his father was a laborer, his mother a housewife, and plaintiff a truck driver. Plaintiff also testified at trial that their parents "looked up to and trusted Joseph."
 5 Normally, proof of a confidential relationship requires a showing that one party has reposed trust and confidence in another who then gains influence or superiority over the other. (Edwards v. Miller (1978), 61 Ill. App.3d 1023, 1027, 378 N.E.2d 583.) A party generally proves the existence of a confidential relationship by establishing facts of an antecedent relationship which gives rise to trust and confidence reposed in another. Ray v. Winter (1977), 67 Ill.2d 296, 304, 367 N.E.2d 678.
In this case, plaintiff presented unrebutted evidence that after the death of their 87-year-old father in 1968, Joseph handled the affairs of their aged mother. Plaintiff and Joseph argued about the share of their parent's money that Joseph was receiving and, in 1971, Joseph suggested that they see his attorney. The declaration which the attorney prepared at the brothers' instructions and which Joseph signed was, in our opinion, an acknowledgment by Joseph that plaintiff was entitled to a portion of their parent's estate. In that document, Joseph agreed that any differences between the money he had already received and the amount plaintiff should receive from their mother's estate after she died would be settled between them and Joseph would pay the difference. By causing the document to be drafted and then signing it, Joseph admitted that he had received funds which, in part, might properly belong to plaintiff.
 6 Keeping in mind that in determining whether to impose a constructive trust, we must consider the principles of equity, good conscience and unjust enrichment, if any (City of Chicago v. Roppolo *966 (1983), 113 Ill. App.3d 602, 609, 447 N.E.2d 870), we conclude that the facts of this case warrant the imposition of a constructive trust over one-half of the funds listed in the April 3, 1971, declaration. We further hold that the constructive trust should also extend to one-half of the sum of $5,000 which represents proceeds which Joseph retained from the sale of the property on Burling Street in 1973. We reach this conclusion based on the admission by Joseph, the personal relationship that existed in this family, the obvious moral obligations which arise from this relationship, and the unjust enrichment that Joseph received by virtue of this relationship.
In the record before us, Anthony, Sr., the father, died in 1968 at age 87. Concetta, the mother, died in 1978 at the age of 90 or over. In 1970, Concetta could not sign her name. Joseph was a licensed real estate broker and managed the affairs of the parents. Plaintiff was a truck driver. When questioning Joseph about the monies which had come into his possession, plaintiff was concerned not only about their aged mother, but also the right of Joseph to retain the funds. It is obvious Joseph realized the problem and took plaintiff to Joseph's attorney where he acknowledged his duty to account to plaintiff for what he had received. Joseph, however, did nothing further prior to his death in 1975. Two years later, this litigation commenced on behalf of Concetta, the aged mother. We think the existence of the confidential relationship between Joseph and the parents created a presumption of influence which was acknowledged by Joseph when he signed the declaration. The record does not show any evidence to rebut the presumption of influence. The record establishes the factors, as herein-above set forth, which are traditionally used in determining whether a confidential relationship exists. While we acknowledge that the opinion of the trier of fact must be given especially great weight in a constructive trust case (Whewell v. Cox (1977), 54 Ill. App.3d 179, 184, 369 N.E.2d 330, appeal denied (1978), 71 Ill.2d 601), we hold that the trial court's finding in this case was against the manifest weight of the evidence.
To summarize, we find that the constructive trust should be imposed on the following items, in addition to the $9,177.54 in the original judgment:

 $21,200  North Avenue property;
 $17,000  proceeds from sale of 1429 North Halsted;
 $ 2,000  proceeds from Bank of Lincolnwood;
 $ 5,000  proceeds from 1840 North Burling.

*967 B
 7 Having reached the decision that a constructive trust should be imposed over the subject funds, we now must consider whether this remedy may be applied against defendant, Joseph's surviving spouse. No evidence was presented which showed defendant took any part in, or had any knowledge of, Joseph's actions involved in this suit. On the other hand, a claimant in a constructive trust can follow property to a gratuitous transferee, who did not have knowledge of the claim of equitable ownership, if that person is not a bona fide purchaser. (5 Scott, Trusts sec. 510, at 3595 (3d ed. 1967); cf. Cusack v. Cusack (1929), 253 Ill. App. 288, 308, rev'd on other grounds (1930), 339 Ill. 108, where the court recognized that as a general rule, a trust may be enforced against a trustee's heir or devisee who acquires the trust funds either with notice of the trust equities or without consideration.) Under Illinois law, a fund impressed with a trust may be traced into a fund of commingled money. Brown & Williamson Tobacco Corp. v. First National Bank (7th Cir.1974), 504 F.2d 998, 1002, citing People ex rel. Nelson v. Bates (1933), 351 Ill. 439, 184 N.E. 597.
 8 In this case, plaintiff requests a money judgment in the amount of $22,600 (which represents one-half of the contested items listed above), plus prejudgment interest. We conclude plaintiff has the right to elect to receive a money judgment (see Bogert, Trusts & Trustees sec. 867, at 72 (2d ed. 1982)) based upon the record of this case.

II
Plaintiff also contends that the trial court erred in not construing the April 3 document as an express trust. In view of our holding above, it is not necessary to discuss this issue.

III
Plaintiff lastly claims that in the event that this court were to declare that either an express or constructive trust exists, he is entitled to prejudgment interest on the amount of the award at the rate of 5% per annum. The date from which his interest should be calculated, plaintiff contends, is April 3, 1971, the date when Joseph acknowledged that he had received the sums listed in the declaration.
 9 In Illinois, there are four instances where interest is to be allowed without agreement by the parties: (1) on money lent or advanced for the use of another; (2) on money due on the settlement of account from the day of liquidating accounts between the parties and *968 ascertaining the balance; (3) on money received to the use of another and retained without the owner's knowledge; and (4) on money withheld by an unreasonable and vexatious delay of payment. (Continental National Bank & Trust Co. v. Olney National Bank (7th Cir.1929), 33 F.2d 437, 440; Ill. Rev. Stat. 1981, ch. 17, par. 6402.) Citing Smith v. Dravo Corp. (7th Cir.1953), 208 F.2d 388, plaintiff advances the proposition that the area of trusts is an example of an exception to strict adherence to the statutory provision. In that case, the court noted that in Illinois "where a fiduciary or confidential relationship exists and is violated, interest upon the recovery may be allowed irrespective of statute." (Smith v. Dravo Corp. (7th Cir.1953), 208 F.2d 388, 391, see also Duncan v. Dazey (1925), 318 Ill. 500, 527, 149 N.E. 495.) Courts have allowed interest on recoveries only when warranted by equitable considerations. Smith v. Dravo Corp. (7th Cir.1953), 208 F.2d 388, 391.
 10 In this case, plaintiff seeks to recover a portion of his parent's estate from his brother Joseph's widow. Joseph predeceased his mother, therefore his obligation to settle any differences between his inheritance and plaintiff's was not determined or due before his death. Joseph died in 1975 without providing a method of carrying out his obligation to plaintiff. The mother died intestate in 1978. Upon her death in 1978, without any previous settlement of this trust, plaintiff's rights could then be determined. We believe Joseph had the use of this money to the detriment of plaintiff for a number of years. Based upon the equitable consideration noted in Smith, we conclude plaintiff is entitled to prejudgment interest from the date of the mother's death.

CONCLUSION
For the reasons set forth herein, we affirm that portion of the judgment of the circuit court of Cook County granting plaintiff one-half of $9,177.54 and reverse the balance of said judgment. We remand the cause to the circuit court of Cook County with directions that the said court enter a revised judgment to include one-half of the $45,200 set forth herein in section IA, plus the one-half of the $9,177.54, and prejudgment interest on the total ($27,188.77) from the date of the death of Concetta LaBarbera.
Affirmed in part; reversed and remanded in part with directions.
STAMOS and HARTMAN, JJ., concur.
NOTES
[1] The original suit was filed February 24, 1977, by Anthony, Jr., individually and as conservator of the estate of Concetta LaBarbera, an incompetent. Concetta, their mother, died in 1978. On February 18, 1982, the letters of conservatorship of Anthony, Jr. were cancelled. An amended complaint was filed February 18, 1982.
[2] We were advised during oral argument that plaintiff's mother died without a will. We therefore conclude that plaintiff's claim to one-half of his parent's estate, although not specifically stated in his complaint, is based upon his statutory intestate share as provided in the descent and distribution provision of the Illinois Probate Act of 1975. Ill. Rev. Stat. 1981, ch. 110 1/2, par. 2-1(b).